# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA.

## JANUARY TERM, 1865.

---

### IRA BIDWELL, et al., vs. JOHN R. MADISON.

I. B., J. R. M. and H. E. B., entered into a banking partnership under the style of Bidwell's Exchange Bank, subject to a stipulation by which J. R. M. was permitted to take a fixed salary in lieu of a share of the profits. J. R. M. elected to take and did take the salary. *Held*—that notwithstanding this election I. B. and H. E. B. remained partners. Under the partnership articles, it was the duty of J. R. M. to take charge of all notes left with the concern for collection.

By the neglect of J. R. M. to make demand and give notice on a note left by F. & M. for collection, the endorser, who was the only solvent party to the note, was discharged. *Held*—that J. R. M. was liable to I. B. and H. E. B., as Bidwell's Exchange Bank, for the consequences of this neglect. At the time when the endorser was so discharged, the Bank held a note against F. & M. of a less amount than the note left by F. & M. for collection. F. & M. remained solvent for more than two years after the note of the Bank against them became due, but declined to pay the same on the ground that they had a larger claim against the Bank for the loss of the note by the negligence of M. *Held*—that the claim of F. & M. for damages was a proper counter-claim against the note of the Bank against them. The Bank made a settlement with F. & M. by sur-

VOL. X.—3

rendering the note against F. & M. and paying a certain amount of money, which was less than the difference between the note of F. & M. and the note held by the Bank against F. & M. *Held*—that the Bank was entitled to recover from J. R. M. the amount of the note surrendered and of the money paid.

The complaint in this action states that the Plaintiffs were co-partners engaged in a general banking and exchange business under the firm name and style of Bidwell's Exchange Bank, at St. Paul, during and prior to the month of May, 1856, to and until about the first day of May, 1858. That on or about the 21st day of April, 1856, the Plaintiffs and Defendant entered into an agreement in writing, by the provisions of which the parties thereto were to become co-partners in such business for one year, under said firm name, unless the Defendant should thereafter, or at the expiration of such co-partnership, elect to receive the sum of $1,300 per annum as a salary, in lieu of a share of the profits of such business. That such copartnership should commence on the 16th day of April, 1856, and continue for one year, &c., &c. That the Plaintiffs under such agreement became copartners under said firm name, and commenced the banking and exchange business, and the Defendant became and was the Cashier of said Bank. At the expiration of one year, said agreement was extended for another year, and the Defendant continued to act as such Cashier. That Defendant elected to receive and did receive from the Plaintiffs the $1,300 per annum as his salary for each of said years, according to the terms of said agreement, and that said Defendant of his own election never was a partner of said firm, but was the Cashier. That it was the custom of said Bank, in their usual course of business, to take and receive from their customers and others, notes, bills, drafts and other commercial paper for collection; and that the Defendant as such Cashier had the exclusive care and control of such collections, and undertook to take all the proper and actual means and legal steps and measures for collecting any and all such notes, &c., left with said Bank for that purpose, by making due presentment for and demand of payment of the same, and in case of non-payment to duly and legally notify the parties thereto, so as to fix their lia-

bility thereon.  That Fuller & Mendelson were the owners and holders of a promissory note of $800, made by one Dunwell, dated the 10th day of July, 1856, and payable sixty days after date, with interest at the rate of three per cent. per month, and said note was endorsed by W. H. Randall and W. B. Brown.  That said Fuller & Mendelson, on or about the 10th day of August, 1856, and before the maturity of said note, left the same with said Bank for collection.  That said note was never duly presented for payment, or payment thereof duly demanded of the maker, and the same was never legally protested for non-payment, and notice of such presentment, demand of payment and non-payment and of such protest was never legally served upon said endorsers or either of them, and that said endorsers were wholly discharged and released from all liability to pay said note.  That the said Dunwell (maker) and Randall (endorser) were at the time of the maturity of said note wholly insolvent, and the said note or any part thereof could not have been collected from them or either of them, or from the estate and property of said Randall, who has since died insolvent; but that the said endorser Brown was responsible, and the amount of said note could have been collected of him, or from his estate after his decease, except for the failure of said Defendant as such Cashier to take the legal steps necessary to charge him as such endorser.  That in consequence of the failure to duly protest said note, the said Fuller & Mendelson sustained damage to the full amount thereof with interest, and that said Bank (the Plaintiffs) became and were liable to pay such amount, and did, on or about      0th day of June, 1860, pay the said Fuller & Mendelson the sum of $627.75 in discharge of such liability ; and that said Defendant is liable to pay and indebted to the Plaintiffs in the amount so paid by them with interest.

The answer denies the whole complaint, except the statements and allegations respecting the making of the note by Dunwell and the endorsement thereof by Randall and Brown, and the ownership of the same by Fuller & Mendelson, and alleges as new matter, " that after the aforesaid note had matured, and after the same had been protested for non-payment, and after the said pro-

test had been notified to the said W. B. Brown as endorser of said note, he, the said W. B. Brown, did, with full knowledge of the said default in the payment of said note, and of the said protest of said note, and of all the facts and circumstances attending the same, and without objection pay to the said Fuller & Mendelson, the owners and holders of said note, the sum of $300 on account of the principal and interest then due and owing upon said note."

The reply denies the new matter set up in the answer. The cause was tried before a Referee, and in his decision the facts are found substantially as alleged in the complaint, except upon the question of a copartnership between the Plaintiffs; and upon this question the Referee sets out in his finding of facts the whole agreement entered into between the parties, dated the 21st day of April, 1856, which agreement (among other provisions) contains the following, to-wit: "Memorandum of agreement made and entered into this 21st day of April, A. D. 1856, between Ira Bidwell, of Adrian, Michigan, of the first part, and John R. Madison, late of Buffalo, N. Y., and Henry E. Bidwell, of Adrian, Michigan, of the second part: The parties above named have agreed to become partners, and by these presents do become partners, in the exchange and banking business, to be conducted and carried on at St. Paul, Minn., under the name of Bidwell's Exchange Bank—the firm consisting of Ira Bidwell & Son, Bankers, and John R. Madison, Cashier. * * * * *

"And it is further agreed between the said parties, that the said John R. Madison, one of the parties of the second part, may, at the expiration of this agreement, viz., on the 16th day of April, A. D. 1857, elect to receive the sum of $1,300 in cash as a salary, in lieu of one-third of the net proceeds of the said exchange and banking business," &c. The Referee finds that a payment of $300 was made upon the note of $800 to Fuller & Mendelson, but says "that there is no evidence to prove when, or under what circumstances, or by what party to said note the same was paid."

The Referee further finds that the Plaintiffs (said Bank) held a note, made by Fuller & Mendelson, of $406, and that when the

Bidwell et al. v. Madison.

same matured they refused to pay the same (although solvent) on the ground that the said Bank was liable to them on account of the failure to protest the note made by Dunwell. That the Plaintiffs made a settlement in June, 1860, with said Fuller & Mendelson, by surrendering to them their note of $406, and paying them the balance due upon the note of $800, which was the sum of $63 in cash. That the note so surrendered, with interest to the day of settlement, amounted to the sum of $482.

As conclusions of law the Referee finds that the Defendant is liable to the Plaintiffs for the amount actually paid by them to Fuller & Mendelson, in June, 1860, with interest from the time of such payment to the date of his report, amounting to the sum of $682.30. Judgment was rendered in favor of Plaintiffs against said Defendant for said sum.

Defendant sued out writ of error.

LORENZO ALLIS, for Plaintiff in Error.

MORRIS LAMPREY, for Defendant in Error.

I.—The report of a referee cannot be reviewed on error or appeal unless exceptions are properly taken during the trial of the cause, or to the final decision, and a case or bill of exceptions made ; the whole theory of practice in courts of review is founded upon exceptions properly taken below; and in reviewing the report of a referee this Court should not examine questions which were not raised below. 12 *How. Prac.* 418 ; *Id.* 481 ; *Id.* 567 ; *Id.* 571 ; *Hurd vs. Bloomer*, 3 *Kernan*, 341 ; *Id.* 344 ; 4 *Selden*, 204, *and cases cited ;* 14 *New York*, 435 ; 16 *New York* 610 ; *District Court Rules, No.* 39 ; *Comp. Stat., sec.* 54, *p.* 564, *and sec.* 66. *p.* 565.

But the Supreme Court has held, that " upon error from a judgment rendered upon the report of a referee, where no exceptions are taken upon the trial, or to the finding, and the evidence is not reported, the only question which this Court can consider is whether the facts found sustain the conclusions of law. 8 *Minn.*, 154; *Id.*, 226 ; 3 *Minn.*, 45.

II.—The report of the referee in this cause finds upon all the facts in issue: " The general conclusion of the referee is to be construed as involving a finding upon all the material questions, though such a finding be not expressed in terms." Only material issues need be considered. But if the report were defective in this respect, the only proper remedy is to apply to the District Court for an order sending the report back to the referee for correction. *Grant vs. Morse*, 22 *New York*, 323 ; 3 *Minn.*, 311 ; 2 *Minn.*, 134 ; 3 *Minn.*, 45.

Upon review this Court will presume nothing in favor of the party alleging error, but if compelled by the imperfection of a referee's report, or the statement of facts, to resort to presumptions, will adopt such only as will sustain the judgment." *Connan vs. Putts*, 21 *New York*, 547.

There is no finding or presumption in this case that Brown, the indorser, ever made any payment on the note of Dunwell, with notice or without notice of the neglect of protest.

III.—Every instrument is to be construed with reference to its object, and all of its terms and the whole context must be considered in arriving at the intention of the parties. 9 *Minn.*, 119.

Madison by his own election, which must be referred back to the date of the agreement, never was a partner in Bidwell's Exchange Bank, " but the firm consisted, as between themselves, of Ira Bidwell & Son, Bankers, with Madison as Cashier," the relation of the parties, and not the firm name, is the material question. 5 *Minn.*, 486.

A mere instrument in writing cannot constitute a copartnership unless something is done under it ; it is the acts and doings of the parties that determine their rights and liabilities. Madison having elected to receive and received his annual salary of $1,300 as Cashier, *inter se*, never had any right to an account, or to any share in the profits if there had been any. *Parsons on Con.*, 133, 135, 136, *and note ;* 6 *Met.*, 82 ; 13 *Barb.*, 302 ; 16 *Barb.*, 309 ; 12 *Cow.*, 69 ; 1 *Denio*, 337 ; 3 *Cow.*, 132 ; 20 *Wend.*, 70 ; 4 *Sandf.*, 311 ; 13 *Gray*, 468 ; 5 *Gray*, 58 ; *Parsons' Merc. Law*,

Bidwell et al. v. Madison.

168, *and note ;* 10 *Met.*, 303; 24 *Ill.*, 483; 24 *Howard's U. S. C.*, 536.

IV.—It is wholly immaterial in this case whether Madison was a partner or not, and can in no way effect his liability. The same diligence, care and skill are required of each partner as of agents, and an agent is bound to possess and use all the knowledge, skill, care and diligence that prudent men employ about the like business, and that are necessary for the proper performance of the duties which he undertakes. Says Lord Loughborough, in 1st *H. Bl.* 151 : " If a man be in a situation or profession to imply skill, an omission of that skill is imputable to him as gross negligence." *Story on Partnership*, secs. 169, 170, 171, 173 ; *Story's Agency*, secs. 182, 183, *et seq.; Dunlap's Paley's Agency*, 71 *to* 78; 3 *Story's C. C. Rep.*, 106 ; 1 *Cow.*, 645 ; 1 *John. Cases*, 179 ; 20 *Pick.*, 167 ; 1 *Parsons' Contr.*, 73, 74, *and note.*

V.—The Plaintiffs below, by reason of the gross neglect of their Cashier, had been virtually subrogated for W. B. Brown as indorser on the note ; by consequence the note remained perfectly good for the amount of it. It was owned by Fuller & Mendelson, and they agreed to pay and did pay their note to the Bank in such note, on which the Bank was practically indorser, receiving the balance in money. Of course one note was a counter-claim to the other. How then can a note which was actually paid in for funds and in money in full be called worthless? *Borup et al. vs Nininger*, 5 *Minn.*, 549.

VI.—The answer admits the amount of damages alleged to have been incurred and actually paid by the Plaintiffs in the complaint, since a general denial of the allegation of the sum paid as damages, like a general denial of value, is wholly insufficient, being merely a negative pregnant and bad in pleading. *Lynd vs. Pickett*, 7 *Minn.*, 194; *Dean vs. Leonard, Jan. Term*, 1865.

*By the Court*—BERRY, J.—It is not necessary to determine in this case what were the relations of the parties to this action to third persons, so that we are not embarrassed by any of the difficulties which might present themselves were we considering the ques-

tion of partnership or no partnership in reference to outsiders. We have only to decide upon the mutual rights and liabilities of the parties to this action as between themselves. The Defendants in error allege in their complaint that they were partners under the style of Bidwell's Exchange Bank. This allegation is denied by the answer. The Plaintiff in error contends that a material issue was therefore raised upon the question of partnership between the Bidwells, and that the Referee has not found the existence of the partnership, and so the Defendants in error have failed to establish a material allegation in their case. The Referee finds that the Plaintiff and Defendants associated themselves in busiiness under a written agreement, set out verbatim in the report, and entered into between Ira Bidwell, of the first part, and John R. Madison and Henry E. Bidwell, of the second part, by which the parties became partners for one year, profits and losses to be equally divided. That they entered upon and carried on business under said agreement, and the renewal of it, for the space of two years, when Madison withdrew, and the business was continued by the Bidwells. There can be no doubt but this state of facts would constitute a partnership between the parties. But the partnership articles contained the following stipulation : "And it is further agreed between the said parties, that the said John R. Madison, one of the parties of the second part, may at the expiration of this agreement, viz., on the 16th day of April, 1857, elect to receive the sum of thirteen hundred dollars in cash as a salary, in lieu of one-third of the net proceeds of the said exchange and banking business," &c. The Referee further finds that Madison elected to receive and did receive the sum of thirteen hundred dollars in pursuance of this stipulation at the expiration of the year, and also at the expiration of the second year. At this stage of the case the question to be considered is, what relation did the Bidwells sustain to each other upon the exercise by Madison of his right to receive a salary in lieu of one-third of the net proceeds of the business ? To be sure, the Referee finds that the losses exceeded the profits, but we do not perceive that that fact is important. We think the fair construction of this state of

facts is, that the Bidwells. and Madison associated themselves together as partners with a special stipulation that Madison might at his own option, at a specified time, elect to be a partner or a salaried employee, and that when Madison elected to be a salaried employee the partnership relation between the Bidwells was not disturbed. They were partners before the election, and that election, provided for as it was in the original partnership articles, left them still partners as it found them. This fact is sufficiently found by the Referee. (*Cady vs. Allen*, 18 *N. Y.*, 57,) The next inquiry would seem to be as to the relation between the Bidwells and Madison, and of course their mutual rights and liabilities. On this head we have already somewhat anticipated.

By the terms of the agreement it would appear that it rested with Madison himself to say whether he was a partner or an employee. He elected to be considered as the latter, and we see no reason why his election should not be decisive upon the question of his capacity and the nature and extent of his liabilitity. By this election he relieved himself from the duty of contributing to make up the losses of the partnership business, and it would be inequitable for him to shield himself from the liabilities which would attach to a capacity which he had assumed of his own voluntary choice. No doubt was expressed upon the argument as to the duty of Madison (who took charge of the note made by Dunwell) to have made a demand of payment upon Dunwell as early as the day of maturity, nor as to the fact that his neglect so to do discharged the endorser Brown, who was the only solvent and responsible party to the note. And we see no reason why Madison was not liable over to his employers, the Bidwells, for any damage arising from negligence of this character. As to the endorsement of $300 made upon the note by Fuller & Mendelson, the owners of the note, there would appear to be no basis for the presumption contended for by the Plaintiff in error, that that sum was paid by Brown, and the Referee finds that there is no evidence upon the subject. On the question of damages, we find nothing wrong in the amount awarded by the Referee. The firm styled Bidwell's Exchange Bank was clearly liable to Fuller & Mendelson for the

neglect by which the Dunwell note was lost, and Fuller & Mendelson had an undoubted right to exact the full amount due on the note as damages. Fuller & Mendelson were the owners of this claim for damages against the Bank, and the Bank held Fuller & Mendelson's paper for a smaller amount. At the maturity of this paper, and at the time when the claim for damages accrued, and for two years afterwards, Fuller & Mendelson were solvent, but declined to pay the note which the Bank held against them on the ground that they were entitled to the damages aforesaid. It does not appear that Fuller & Mendelson were insolvent at the time of the agreement of settlement between them and the Bank, and it is perhaps unimportant whether they were or not. The claim of Fuller & Mendelson against the Bank for damages, was a proper matter of set off against the note held by the Bank. It was a claim for damages arising from the non-fulfilment of a contract to make the demand and give the notice necessary to fix the liability of an endorser. An action of assumpsit might have been maintained at common law in such case, for as Chitty says: "The breach of all simple contracts * * * for the performance of any act is remediable by action of assumpsit." (1 *Ch. Pl.* 100.) "Assumpsit is the usual remedy for neglect or breach of duty against bailees." (*Ibid* 134.) See also 6 *Minn.* 352. The Bank might well forbear to enforce collection of the note against Fuller & Mendelson, so long as Fuller & Mendelson held a claim against the Bank sufficiently large to swallow its note up. We think the referee was right in awarding the amount of damages found in his report, being the amount paid by the Bank in settlement of Fuller & Mendelson's claim, especially as this amount (according to our computation,) was less than the claim, and so an abatement had been secured in the advantage of Madison. We also think that under all the circumstances of the case, the referee was right in regarding the note against Fuller & Mendelson, which was surrendered on the settlement as so much cash. The counsel for the plaintiff in error insists that inasmuch as Madison was allowed to receive his salary of $1300, after this act of negligence by which the Bank became liable, and without any claim being made upon

him on account of the negligence, he had a right to take it for granted that the Bidwells had assumed this liability to themselves, and that he was clear from it.   If the defendants in error saw fit to pay Madison his salary and hold him for damages for his neglect, they had a right so to do, and the fact that nothing was said about the claim for negligence at the time when he received his salary, would only go to show that the matter was not then adjusted.

The judgment below is affirmed.