In the matter of JOSEPH DOLL, Petitioner.

December 17, 1891.

Habeas Corpus—Application, where to be Made.—Under the provisions of Gen. St. 1878, c. 80, §§ 23, 24, a person applying for the writ of *habeas corpus* must apply for it to a court or judge thereof, if there be one capable and willing to act, in the county where he is restrained of his liberty, and, if there be none in that county, then to the nearest or most accessible court or judge capable and willing to act; and he cannot pass over such near or accessible court or judge, and go to any court or judge in the state that he may select, either to a district court or judge thereof, or to the supreme court or a judge thereof.

Petition for writ of *habeas corpus*.

*Knute Nelson,* for petitioner.

GILFILLAN, C. J.   This is an application for a writ of *habeas corpus* requiring the managers and superintendent of the state reformatory at St. Cloud, Stearns county, in this state, to produce before this court Joseph Doll, who, upon an indictment and conviction of a criminal offence, was sentenced by the district court in Otter Tail county to be confined in said reformatory.   No proof or evidence is offered, nor is it suggested, that there is not in Stearns county a court or officer authorized to grant the writ, or, if there is, that he has refused to grant it, or is absent or incapable of acting.

This raises the question whether this court, or a judge thereof, is required or authorized to grant the writ as a matter of course, when applied for, to run into any county of the state in which the applicant may be restrained of his liberty.

Gen. St. 1878, c. 80, § 23, prescribes that the application for the writ shall be made "to the supreme or district court, or to any judge

thereof, being within the county where the prisoner is detained, or if there is no such officer within such county, or if he is absent or from any cause is incapable of acting, or has refused to grant such writ, then to some officer having such authority residing in any adjoining county."

Section 24: "Whenever application for any such writ is made to any officer not residing within the county where the prisoner is detained, he shall require proof by the oath of the party applying, or by other sufficient evidence, that there is no officer in such county authorized to grant the writ; or, if there is one, that he is absent, or has refused to grant such writ, or for some cause, to be specially set forth, is incapable of acting; and, if such proof is not produced, the application shall be denied."

The statute (title 3, c. 80) regulating the writ of *habeas corpus* seems to have been framed with reference, *first*, to securing and enforcing the constitutional right to the writ; and, *second*, to avoiding, so far as consistent with that first purpose, public inconvenience and abuse of the writ. Under its provisions it is hardly possible that one entitled to the writ can fail to obtain it, for, if one court or officer refuses to or cannot act, he may apply to another, and so on, until he obtain it. But great public inconvenience might arise from his being allowed, in the first instance, to select from among the courts and officers in the state authorized to issue such writs the one to which or to whom he will apply. In the first place, it is undoubtedly the intention of the constitution and of the statutes that the judicial business of any county or district shall ordinarily be done by the judicial force provided for it, and shall not, unnecessarily, be cast on the judicial force provided for some other. And also if one committed upon examination for an alleged criminal offence, say in the county of Pipestone, may apply for the writ in the first instance, and as of course, to the district court or a judge thereof in the county of St. Louis, thus making it necessary for the sheriff and county attorney in Pipestone to go to St. Louis county, when perhaps their public duties require their presence in their own county, great inconvenience in the public business might ensue. The statute intends that this shall not be done except it be necessary in order to pro-

cure the writ, and what shall be deemed to make it necessary the statute prescribes. It is for this purpose the statute provides that the application must be made in the first instance in the county where the applicant is restrained of his liberty, if there be an officer capable of acting in that county; and it is only in the absence of any such officer, or his refusal to act, that he may apply to an officer residing "in any adjoining county." In view of the constitutional right to the writ, and the manifest purpose of the statute that one entitled to it shall not fail of opportunity to have it, the words, "in any adjoining county," are not to be literally construed. Were they to be so construed, then the statute by its terms might, in some cases, withhold the writ. For there might be a case where, from the absence of a court or officer authorized to act, or of refusal to issue it, the writ could not be obtained either in the same or in any adjoining county. They must be understood rather as indicating the purpose that, if the writ cannot be obtained in the same county, then the application may be made in the nearest or most accessible county, though it may not be actually adjoining. Unless our interpretation of this phrase be correct, then, where there is no court or officer capable and willing to act in the same or an adjoining county, the person detained must either fail to get the writ, or he may select from the entire judicial force of the state, and go from his own county, perhaps in one corner of the state, to the remotest county, passing over all intervening courts and judges.

The same reasons which induced the legislature to provide that application shall not be made in the first instance to an officer in any other county, when there is an officer capable of acting in the county where the applicant is restrained of his liberty, are equally applicable where the application is made to a court. In the case put, of one confined in Pipestone, the reasons for his not being allowed to pass over the district court or a judge thereof in that county, or in a near accessible county, and apply to the district court in St. Louis county, are precisely the same as those against his being allowed to apply in the first instance to a judge of the court in the latter county. The words in section 23, "being within the county where the prisoner is detained," must therefore be held to apply as well to the court as to

a judge of the court; and we think also that the words, "then to some officer having such authority," are to be held to include the court as well as the judge thereof. And we think, also, that it is most in accordance with the spirit of the act, which certainly must be construed liberally with a view of its general purposes, that the term "residing in" is not to be restricted to an actual permanent residence in the county, but to be held as including the case of presence in the county for the purpose of transacting judicial business therein.

As we construe the statute, then, any one desiring the writ must apply to the court or judge thereof in the county where he is restrained, if there be one present capable and willing to act, and, if there be none, then to the nearest or most accessible court or judge capable and willing to act, and that he cannot pass over such near and accessible court or officer, and go to any court or judge in the state that he may select. In this respect the supreme court, or a judge thereof, stands on the same footing with the district court or a judge thereof. The jurisdiction in such cases, being original, is precisely the same, and subject to the same restrictions in its exercise.

Writ denied.