STATE ex rel. FRANK MURPHY v. HENRY WOLFER.[1]

October 2, 1914.

Nos. 19,047—(297).

**Commutation of life sentence — allowance for good conduct.**

    1. A prisoner sentenced to the state prison for life, whose sentence is commuted to one for a term of years, is entitled to diminution of that sentence by reason of good conduct, commencing on the day of his arrival in prison, and not from the time of commutation of his sentence.

**Habeas corpus.**

    2. It is the practice of this court to refuse to issue writs of *habeas corpus* in ordinary cases and unless the circumstances are exceptional. In view of the importance of the case and the importance of an early final determination of it, this original proceeding is entertained.

Upon the relation of Frank Murphy this court granted a writ of *habeas corpus* directed to Henry Wolfer, as warden of the state prison at Stillwater, requiring him to show cause why relator was detained in custody. Relator discharged.

*Harold J. Richardson,* for relator.

*Lyndon A. Smith,* Attorney General, for respondent.

HALLAM, J.

On October 23, 1893, the relator, Frank Murphy, was sentenced to the state prison for life. On October 30, 1893, he commenced serving his term, and he has ever since been imprisoned. On July 24, 1914, the state board of pardons commuted the sentence to imprisonment for the term of 30 years. During the time of relator's imprisonment his conduct has been such that, if his sentence had been originally for the term of 30 years, he would now be entitled to his liberty, under the law relating to the diminution of sentences by rea-

[1] Reported in 148 N. W. 896.

Note.—Construction and effect of statutes providing for reduction of term of sentence for good behavior, see note in 34 L.R.A. 510.

son of good conduct in prison. The only question in the case is whether the relator is entitled to credit by reason of good conduct prior to the commutation of his sentence.

The statute provides:

"Every convict sentenced for a definite term other than life * * * may diminish such term as follows:

"First—For each month, commencing on the day of his arrival, during which he has not violated any prison rule or discipline, and has labored with diligence and fidelity, five days.

"Second—After one year of such conduct, seven days for each month.

"Third—After two years of such conduct, nine days for each month.

"Fourth—After three years, ten days for each month for the entire time thereafter." G. S. 1913, § 9309.

There is very little in the decided cases that throws much light upon the construction of this statute. A few principles applicable to the case are, however, well settled. It is well settled that a commutation of a sentence is a substitution of a less for a greater punishment. After commutation the commuted sentence is the only one in existence, and the only one to be considered. After commutation, the sentence has the same legal effect, and the status of the prisoner is the same, as though the sentence had originally been for the commuted term. Johnson v. State (Ala.) 63 So. 163; In re Hall, 34 Neb. 206, 209, 51 N. W. 750; 5 Opinions of Atty. Gen. (U. S.) 370; Lee v. Murphy, 22 Gratt. (Va.) 789, 799; In the Matter of Victor, 31 Oh. St. 206, 208. It should logically follow that when a prisoner's sentence is reduced from a life sentence to "a definite term other than life" he is brought within the language of the statute allowing a diminution of such a definite term for good time. This view is sustained by the decision in In re Hall, 34 Neb. 206, 51 N. W. 750, and it seems to us correct in principle.

The contention of the state is, not that the prisoner is not entitled to credit for "good time" at all, but that the "good time" credited to him is to be computed from the time of the commutation of his sentence. We find no warrant in the language of the statute for this

construction. The statute is explicit as to the time when the computation of credit for good conduct commences. When credit for "good time" is allowed to a prisoner at all, it commences, by the express terms of the statute, "on the day of his arrival" in prison. In Re McMahon, 125 N. C. 38, 34 S. E. 193, a case which seems to sustain the contention of the state, the statute construed differs from ours in this particular.

The view of the state further appears to be that the theory of the allowance of good time is that it is something which, if ever credited at all, must be credited from month to month as it is earned, and that, inasmuch as it could not be credited in this manner as long as the prisoner was serving a life sentence, it is not available in diminution of the commuted sentence. This is not the theory of the statute. Good time is not really credited to the prisoner at all until enough has been earned to give him his liberty. Up to that time all benefit to the prisoner on account of good time is liable to forfeiture by reason of a provision that the board of control "in view of the aggravated nature and frequency of offenses, may take away any or all of the good time previously gained." G. S. 1913, § 9309. Nor is it true that good time cannot under any circumstances be credited from time to time to a person serving a life sentence. Another statute provides that "no convict serving a life sentence shall be paroled until he has served thirty-five years, less the diminution which would have been allowed for good conduct had his sentence been for thirty-five years." G. S. 1913, § 9319.

We do not, however, regard these considerations of primary importance. We base our decision on the proposition that the fair construction of section 9309 is that every prisoner serving a sentence for a fixed term of years, whether it be an original or a commuted sentence, is entitled to a diminution of that sentence by reason of good conduct, "commencing on the day of his arrival" in prison. It follows that the relator has completed his sentence and is entitled to be discharged from prison.

In this case the original writ of *habeas corpus* was issued out of this court, running to the respondent in Washington county. This court, as well as the district court, may, subject to certain restrictions,

issue an original writ of *habeas corpus*.  G. S. 1913, § 8284.  We are not unmindful of the decision In re Doll, 47 Minn. 518, 50 N. W. 607, to the effect that the statute contemplates that the application for the writ should be addressed to a court or judge in the county where the prisoner is restrained, if there be one present and willing to act, and it has been the practice of this court to refuse to issue writs of *habeas corpus* in ordinary cases and unless the circumstances are exceptional.  But in this case relator and respondent joined in consent to the commencement and determination of this proceeding in this court, and, in view of the importance of this case and the importance of an early final determination of the question presented, since several other similar cases await the result of this one, this original proceeding is entertained.

Relator discharged.

BROWN, C. J., took no part.