CECILIO ECHEANDÍA FONT, Petitioner, *v.* J. ANTONIO ALVARADO, ACTING WARDEN OF INSULAR PENITENTIARY, Respondent.

No. 424.   Argued January 12, 1944.—Decided March 7, 1944.

*Juan B. Soto* for petitioner. *R. A. Gómez, Prosecuting Attorney (Fiscal),* and *Luis Negrón Fernández, Assisstant Prosecuting Attorney* for respondent.

MR. ACTING CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

Cecilio Echeandía Font who is at present confined in the Insular Penitentiary, filed in this court a petition for *habeas corpus.* On December 16, 1943, we issued the writ returnable to the District Court of San Juan. On December 22, 1943, considering that the legal question involved in this case was a new one in this jurisdiction and that its decision would affect the situation of many convicts who at present are serving sentences in the same penitentiary, we issued a new order on motion of the prosecuting attorney of this court with the consent of the petitioner directing that petitioner be brought before this court on January 12, 1944.

The petitioner was confined to the penitentiary on August 25, 1925, to serve a life sentence imposed on him by the District Court of Arecibo. On March 28, 1941, the Governor of Puerto Rico commuted said sentence and reduced the penalty to 30 years' imprisonment, which is the one that the petitioner is serving at present.

Petitioner alleges that the 30-year sentence was extinguished and served on November 12, 1942, in accordance with the provisions of Act No. 180 of May 15, 1943; and

that notwithstanding the good conduct and diligence observed by him during all the time he has been incarcerated, the warden of the penitentiary still keeps him under his custody and deprives him of his liberty alleging as an only basis that according to his opinion the above-mentioned Act No. 180 of May 15, 1943, has no retroactive effect. Section 1 of said Act in its pertinent part reads thus:

"Section 1.—From and after April 1, 1907, every prisoner sentenced or who may be hereafter sentenced to imprisonment in the Penitentiary, or to imprisonment at hard labor in the district jails of Puerto Rico, who observes good conduct and assiduity, shall be entitled to the following reductions in the terms of his sentence, which shall be computed from his commitment to the jail or penitentiary, provided he is committed after the first day of April, 1907.

" *      *      *      *      *      *      *

" (8) For a sentence of thirty years or more, 13 days a month."

Petitioner sustains that in accordance with the provisions of the said Act he is entitled to a reduction of 13 days for every natural month elapsed since August 25, 1925, that is, since the date on which he was committed to the penitentiary to serve the penalty of life imprisonment.

In opposition to the petition the prosecuting attorney sustains:

(a) That the benefits for good conduct should be computed from and after the date of the commutation and not from the date of petitioner's commitment to the penitentiary to serve the sentence for life imprisonment; and

(b) That Act No. 180 of May 15, 1943, has no retroactive effect.

The question involved in this proceeding is new in this jurisdiction. And the jurisprudence that we have been able to find is scarce and to a certain extent contradictory.

In the case of *In re McMahon,* 125 N. C. 38, 34 S. E. 193, the petitioner was originally sentenced to capital punishment which was commuted to that of life imprisonment and the latter reduced to a term of 12 years. The Law of North

Carolina having been amended increasing to 5 days the benefits for each month in all sentences, the petitioner claimed the benefits of the new law from the date from which he started to serve the sentence to life imprisonment, alleging that if those benefits were credited he had the right to be discharged for having served his 12-year sentence. The Supreme Court of North Carolina held that when a sentence for life imprisonment is commuted for that of a term of imprisonment, the benefits of such statutory commutation for good conduct must be credited to the person convicted only from the date of the commutation of the penalty of life imprisonment on. Said court expressed itself thus:

"The view we take of this case compels us to disagree with the contention of the petitioner, and to hold that he is not entitled to anything under the statutory commutation acts, and that he was not entitled to anything under the original sentence of death; but we have to hold that he is entitled to more now than he was then—that he is now entitled to the statutory commutation as a prisoner for years.

"The discussion of this case leads us to the following conclusions: (1) That a prisoner for life is not entitled to the statutory commutation contained in the act of 1899, or in the statute of 1885, or in section 3445 of the Code. (2) That a prisoner whose term has been commuted from a life sentence to a term of years is entitled to the statutory commutation contained in these statutes, from and after the date of such commutation. (3) That the act of 1899 was amendatory of the former acts, and only changed the rule by which statutory commutations should be determined after its passage. (4) That the passage of the act of 1899 did not take away from prisoner the statutory commutation they had earned up to the time of its passage, but that they are still entitled to the same, and also to what they may be entitled to under the act of 1899; that what they had earned before the passage of the act of 1899 and what they have earned under the act of 1899 may be added together, to entitle them to a discharge, if, by so adding, they are entitled to the same,—that is, if, by so adding, they complete the term of years for which they are imprisoned. Applying these rules, it is seen that the petitioner is not entitled to his discharge, and the judgment appealed from is affirmed."

The case of *State* v. *Wolfer,* 127 Minn. 102, 148 N. W. 896, seems to sustain a contrary doctrine. Nevertheless, said case can be distinguished from that of *McMahon* due to the fact that, in accordance with the statute of North Carolina, the credits for good conduct should be computed from month to month; and, if the law did not allow any benefit to those sentenced to life imprisonment, the commuted sentence could not be reduced during the period served under the sentence for life imprisonment. In accordance with the statute of Minnesota, the credits are not allowed from month to month. Prisoners in said State are not granted monthly reductions for good conduct and no benefit whatsoever is allowed them until they are in a condition of being discharged due to the application of all the benefits they have deserved for their good conduct.

We must now consider the local statute, that is, the law establishing a reduction in the sentences of persons confined in penal institutions of Puerto Rico, approved March 14, 1907 and amended by Act No. 180 of May 15, 1943.

The first paragraph of §1, *supra,* is identical in both acts. The legislator, bearing in mind that the purpose of the law was the same in 1943 as in 1907, did not alter said paragraph and limited himself to increasing the number of days that in each month should be credited to the prisoner for good conduct, according to the term of imprisonment to which he had been sentenced. To those confined for thirty years or more their credit was increased from 10 days to which they had a right under the Act of 1907, to 13 days per month.

The last paragraph of §1, in both the original statute and the amended one, reads thus:

"Said deduction shall be for the calendar month and if the sentence of any prisoner covers a fraction of a month, whether at the beginning or at the end of said sentence, he shall be credited with one day for each five days or part of same contained in said fraction."

The law also provides (§3) that the bad conduct of the prisoner can be punished by the penal authorities "by the reduction or cancellation of the good time for the month in which the offense was committed, and for serious offenses the prisoner shall be subject to further reduction and cancellation upon approval of the Supervisor of Prisons of the good time."

Petitioner while serving his life sentence had no right to a reduction for good conduct nor was he subject to the penalties provided for by §3 of the Act for cases of bad conduct. It is obvious that a person imprisoned for the rest of his life can derive no benefit from the allowance nor any prejudice from the reduction or cancellation of benefits previously granted.

The contention of the petitioner that he has also a right to the statutory commutation of 13 days per month from August 25, 1925, date on which he started to serve the penalty of life imprisonment is untenable.

The language of §1 of the Act of March 14, 1907, is clearly prospective. The act was approved March 14 to become effective on that same date. With an eye to the future, the legislator provided that "On and after April 1, 1907," every prisoner sentenced to imprisonment in the penitentiary "who observes good conduct and diligence shall be entitled" to the reductions provided for in the same section. The legislator does not allow the benefit of said reductions to the prisoner who has observed or should have observed good conduct, but to that who observes it after the approval of this Act.

The fundamental purpose of the statutes that reward the prisoners with reductions or allowances to the term of imprisonment to which they have been sentenced is that of awakening in them the desire to observe good conduct so that they will deserve the benefits granted by the statute.

226

It is not the purpose of that legislation to reward the prisoner retroactively for his observance of good conduct in the past. 41 Am. Jr. Prisons and Prisoners, §§41 *et seq.*

The statute contains no provision expressly declaring that it should be applied retroactively, and we have already seen that from its context it necessarily appears that the intention of the legislature was completely the contrary.

Considering then that both the Act of March 14, 1907, as well as Act No. 180 of March 15, 1943, are prospective in effect and character, we are obliged to decide that the petitioner is only entitled to the reductions which he deserves for his good conduct, that is, ten days per month from and after August 25, 1925, the date on which he was committed to the penitentiary. The law in force on that date was that of March 14, 1907. When the life imprisonment was commuted to that of thirty years, imprisonment, the petitioner acquired the status of an inmate for a term of 30 years from the date of his commitment to the penitentiary and from that date was also entitled to the reductions of 10 days for each month of good conduct according to the statute then in force. Act No. 180 of May 15, 1943, went into effect 90 days after its approval, that is, on August 13, 1943. From that date on the petitioner is entitled to be credited 13 days for each month during which he shall observe good conduct.

For the above-stated reasons the petition must be dismissed and the writ issued vacated.