JULIUS W. WOJAHN AND ANOTHER v. OTTO P. HALTER.
HARRY FAUL, RELATOR.
ALBERT H. ENERSEN AND ANOTHER, RESPONDENTS.[1]

November 4, 1949.

No. 35,060.

---

[1]Reported in 39 N. W. (2d) 545.

C. Alfred Bergsten, for relator.
W. A. Lienke and O. J. Finstad, for respondents.

KNUTSON, JUSTICE.

This matter comes here on an original petition for a writ of habeas corpus challenging the validity of the imprisonment of relator, Harry Faul, for contempt of court. The case has been submitted here on affidavits of the parties, who have agreed orally that if the deponents in the affidavits were called as witnesses their testimony would be the same as the affidavits they have signed and that the affidavits may be considered to be the testimony of the deponents the same as if they had been called as witnesses. For the purpose of this decision, we may assume that the following facts have been established:

On August 20, 1948, relator, Harry Faul, being then the owner of a quarter section of land in Cottonwood county, sold the same by contract for deed to Julius W. Wojahn and Anna L. Wojahn, under the terms of which the seller agreed to deliver possession on March 1, 1949. At the time of this sale, the premises were in the possession of one Otto P. Halter under the terms of a lease executed March 2, 1948, and expiring by its terms on April 30, 1949. The agreement to deliver possession under the contract for deed to the Wojahns was subject to the rights and privileges of the lessee under

the terms of his lease. Halter refused to surrender possession, claiming that Faul had orally extended the terms of the lease so as to run through the year 1949.

On March 9, 1949, an action was commenced in the district court of Cottonwood county by Wojahn and Faul as plaintiffs against Halter as defendant, alleging that the lease by inadvertence was drawn so as to expire on April 30, 1949, whereas it was the intention of the parties that it should expire on March 1, 1949, and asking relief by way of reformation of the lease so as to reflect the true intention of the parties, and for recovery of possession of the premises. Halter answered, denying the claims of plaintiffs and alleging that he was in possession under a partially performed oral lease, and asked as affirmative relief that the court decree that he had such oral lease extending the terms of the written lease to March 1, 1950. Issues were joined, and prior to trial plaintiffs dismissed their cause of action upon the demand of Faul, and the case went to trial upon the answer and counterclaim of defendant. Upon the completion of the trial and before findings were made, at the suggestion of the trial court the parties agreed upon a settlement of their differences and entered into a written stipulation for settlement and for a dismissal of the action. This stipulation was signed by all the parties and by their attorneys. Under the terms thereof, the action was dismissed with prejudice, and defendant relinquished all claims against plaintiffs, in consideration of which he was to be paid the sum of $1,300. The stipulation provides that the "action be, and the same hereby is, dismissed with prejudice upon its merits and without costs or disbursements to either party by the plaintiffs paying to the defendant the sum of $1,300.00, the receipt whereof is hereby acknowledged." While the stipulation does not show what portion of the $1,300 payment was to be made by each plaintiff, it was orally agreed that Faul should pay $800 thereof and Wojahn $500. Wojahn deposited his share of the payment in court, but Faul, who did not have the money with him, failed to make payment of his share.

On June 22, 1949, the district court of Cottonwood county, upon application of the attorneys who had represented Faul in the trial of the above-mentioned case, issued an order commanding Faul forthwith to deposit said sum of $800 in court, or, if it was not deposited within five days thereafter, to show cause on July 12, 1949, why he should not be found in contempt of court and punished accordingly. Faul failed to make such payment, and on July 12, 1949, was found guilty of contempt, and sentence was imposed requiring him to pay a fine of $100 and committing him to the county jail.

Commitment to the county jail followed promptly. On July 14, we issued our order releasing Faul from jail upon his own recognizance, directed to the sheriff of Cottonwood county and the Honorable Albert H. Enersen, judge of the district court, commanding them to show cause why a writ of habeas corpus should not issue. Both respondents made returns to the order to show cause. The Honorable Albert H. Enersen entered a special appearance and moved for a dismissal of the proceeding upon the ground that relator has an adequate remedy by appeal and that he is not entitled to be discharged on a writ of habeas corpus. He also entered a general appearance in the event this motion is denied.

By consent of the parties, we have considered the case on its merits as though a writ had already been issued.

Respondents contend that an original petition for a writ of habeas corpus may not be entertained by this court unless application has first been made to a judge of the district court of the county wherein the petitioner is restrained, if there is one capable and willing to act, and, if there is none within such county, then to the nearest or most accessible court or judge capable and willing to act, relying upon In re Doll, 47 Minn. 518, 50 N. W. 607.

This court has original jurisdiction of a writ of habeas corpus under Minn. Const. art. 6, § 2, and M. S. A. 589.02. State v. Grant, 10 Minn. 22 (39); In re Snell, 31 Minn. 110, 16 N. W. 692.

The decision in In re Doll, *supra,* is based on G. S. 1878, c. 80, § 23, which provides that the application shall be made "to the

supreme or district court, or to any judge thereof being within the county where the prisoner is detained; or if there is no such officer within such county, or if he is absent, or from any cause is incapable of acting, or has refused to grant such writ, then to some officer having such authority residing in any adjoining county."

The statute remained such until the revision of 1905. In R. L. 1905, § 4574, the language was made to read: "to the supreme court, or to the district court of the county within which the petitioner is detained." Had the statute gone no further, there would have been no difficulty. However, the next sentence reads: "Any judge of the court to which the petition is addressed, being within the county, or, if addressed to the district court,.the court commissioner of the county, may grant the writ. If there be no such officer within the county capable of acting and willing to grant such writ, it may be granted by some officer having such authority in any adjoining county." The statute has remained such since that time. M. S. A. 589.02.

It would seem that by inserting a comma between the words "to the supreme court" and the following words, "or to the district court of the county within which the petitioner is detained," the legislature intended to make a distinction between the supreme court and the district court insofar as the requirement that application be made to a court of the county in which the petitioner is detained, but the latter part of the statute leaves some doubt on this construction. It could hardly be that the legislative intent was that a judge of the supreme court must be in the county of detention before a writ could issue out of this court.

The change in the statute was not observed in State ex rel. Murphy v. Wolfer, 127 Minn. 102, 148 N. W. 896, L. R. A. 1915B, 95. We held in that case that in spite of In re Doll, 47 Minn. 518, 50 N. W. 607, *supra,* we could issue a writ in an original proceeding in exceptional cases without first requiring application to a court or the judge of the county of detention.

. We do not believe that the legislature intended to so circumscribe the power of this court in issuing original writs of habeas corpus in

a proper case as to limit such power to cases arising in Ramsey county or a few adjoining counties to the exclusion of the other counties of the state. While we do not wish to encourage the practice of applying to this court for an original writ when a judge of the district court is available, we undoubtedly have the power to issue such writ in an appropriate case where a final and speedy decision is important to the preservation of the right to liberty of a citizen improperly restrained. We consider this case of that nature.

Respondents' next contention is that a petition for a writ of habeas corpus here should be denied for the reason that relator has an adequate remedy by appeal and that such remedy is exclusive. It is true that a writ of habeas corpus may not be used as a substitute for appeal. However, the purpose of a writ of habeas corpus is to speedily test the propriety of the restraint. State ex rel. Bales v. Bailey, 106 Minn. 138, 118 N. W. 676, 19 L.R.A.(N.S.) 775, 130 A. S. R. 592, 16 Ann. Cas. 338. When a citizen is improperly restrained of his liberty, he should not be compelled to languish in prison while the slower process of appeal takes its course, when it appears on the face of the record that the court imposing the sentence of imprisonment lacks authority or jurisdiction to impose the sentence. Absent the ability to furnish bail, relator in this case would find his ultimate victory upon appeal from the court's judgment a hollow one after having served all or a substantial part of his term in prison, as would have been the case here if he were denied the right of habeas corpus.

The same question was raised in Commonwealth ex rel. Di Giacomo v. Heston, 292 Pa. 63, 66, 140 A. 533, 534, and, in rejecting the contentions of the commonwealth that the remedy by appeal was exclusive, the Pennsylvania court said:

"The attack on the legality of the commitment may be made by writ of habeas corpus, as here, instead of by appeal. The former procedure is not to be made a substitute for the latter * * * but the appellate court may exercise original jurisdiction and grant relief where lack of power to make the order, or sentence complained

of, appears * * * but not otherwise: * * *. And, in passing upon the application, the record alone will be considered: * * *."

See, 37 Yale L. J. 1158.

We come next to the merits of the case. The question to be determined is simply this: Was the imprisonment of relator contrary to the constitutional prohibition against imprisonment for debt?

The term "debt" as used in Minn. Const. art. 1, § 12, has been limited to obligations to pay money or something due and owing from one to another arising out of a contract, express or implied. State ex rel. Johnson v. Becht, 23 Minn. 1. Our constitution expressly excepts imprisonment for fraud in contracting a debt. The imprisonment in such case is for the fraud and not for the debt. In re Burt, 56 Minn. 397, 57 N. W. 940; Northern Cedar Co. v. French, 131 Wash. 394, 230 P. 837; 22 Minn. L. Rev. 424. An obligation to pay money under a stipulation for settlement is a debt within the meaning of our constitution. The case of Commonwealth ex rel. Di Giacomo v. Heston, *supra,* is almost exactly parallel to the case before us on its facts. In holding that the defendant could not be imprisoned in the situation there presented, the court said (292 Pa. 69, 140 A. 536):

"* * * There was no evidence or finding showing relator was guilty of the fraud charged. The parties voluntarily agreed, before final hearing, to adjust their differences, determining the amount due to each of the plaintiffs, and, by consent, it was decreed that the defendant should pay these respective amounts. There is no adjudication to show that relator was other than a debtor for the sums fixed under the obligation arising from his oral agreement. Though the bill averred misconduct as a partner, the truth of such allegation is not made the basis of the decree, which at most is a direction to account for the sums due under the express contract between the parties, * * *."

The same is true here. We need go no further than the court's order and sentence to so determine. The pertinent portion thereof reads:

"IT IS THEREFORE FOUND BY THE COURT that you are guilty of contempt of court in failing to comply with your stipulation and to comply with the order of this Court, dated June 22, 1949, * * * *requiring you to make the said payment of $800 within a certain period of time; * * *.*" (Italics supplied.)

After imposing sentence of commitment to the county jail, the concluding sentence of the court's order is: "Any time you wish to pay the $800 and fine, you may be considered purged as to this contempt."

It seems clear that the only failure on the part of relator for which he was found guilty of contempt was failure to pay the amount which he had agreed to pay under the stipulation of settlement. There is no escape from the conclusion that such obligation was a debt within the meaning of our constitution, and it follows that imprisonment for failure to pay such debt is contrary to the constitutional prohibition against imprisonment for debt, and that relator must be forthwith released.

■ Cases upholding the right to imprison for failure to pay alimony or support for minor children are not in point. It has long been held that an obligation to pay support for a child (State ex rel. Johnson v. Becht, 23 Minn. 1), or alimony (Hurd v. Hurd, 63 Minn. 443, 65 N. W. 728; Cain v. Miller, 109 Neb. 441, 191 N. W. 704; 7 Minn. L. Rev. 407; 18 *Id.* 45), is not a debt within the meaning of the constitutional prohibition against imprisonment for debt.

Nor are cases involving imprisonment for contempt upon failure to deliver specific property decreed by the court of any help to respondents. There, also, the contempt consists of failure to comply with the court's order, lawfully made, and not for the failure to pay money due under a contract. Respondents rely upon Wenger v. Wenger, 200 Minn. 436, 441, 274 N. W. 517, 520, where, in upholding a sentence of imprisonment for failure to make payments under a divorce decree, we said:

"Disobedience of any lawful judgment, order, or process of the court is a contempt."

The case is not authority here, for the simple reason that the court's order in this case was not lawful, but, to the contrary, was in violation of our constitutional prohibition against such imprisonment. If, as respondents contend, failure to obey a court's order requiring a debtor to pay an ordinary debt could be made the basis for a sentence of imprisonment on the ground that the debtor was guilty of contempt, little would remain of our constitutional protection against imprisonment for debt. A lawful order or decree presupposes authority on the part of the court to make it. Where such authority is lacking, the order is not lawful, and failure to obey it cannot be made the basis for a finding of contempt.

Let a writ of habeas corpus issue and the relator be forthwith discharged.

