LUELLA B. CLAUSEN v. FRANK CLAUSEN.

84 N. W. (2d) 675.

July 26, 1957—No. 37,060.

*Charles W. Kennedy* and *Bradford & Kennedy,* for appellant.
*Frank L. King* and *King & Flora,* for respondent.

FRANK T. GALLAGHER, JUSTICE.
Appeal from a judgment of contempt dated August 9, 1956, and

from an order of the district court directing the issuance of a warrant of commitment dated August 16, 1956.

An examination of the record reveals that on May 16, 1955, a judgment was entered providing, among other things, that the bonds of matrimony existing between plaintiff, Luella B. Clausen, and defendant, Frank Clausen, be dissolved and that the parties be divorced each from the other, and further, that Frank Clausen pay to Luella Clausen as alimony $150 per month, commencing June 1, 1955.

On July 11, 1955, pursuant to a stipulation between the parties, an amended judgment was entered providing, among other things, that defendant should pay the sum of $100 per month alimony and that he should also pay to the Staples State Bank $100 per month on an indebtedness incurred by defendant to plaintiff in the sum of $4,100, this indebtedness being represented by a promissory note dated June 25, 1955, and payable to the plaintiff. It is also recited in the judgment that the note has been endorsed by the plaintiff to the Staples State Bank and that the payments of $100 shall be made to the bank on the first day of each month until the note and interest thereon are entirely paid.

Apparently the defendant neglected to make the payments to the bank and to his former wife as provided for in the amended judgment as an order was issued on May 16, 1956, ordering him to appear on May 26 to show cause why he should not be adjudged in contempt for his failure to comply with the terms of the amended judgment.

A hearing was then held on the return date of the order to show cause but defendant did not appear. Thereafter an order was issued by the district court stating that, upon reading the affidavit and upon all the files, records, and proceedings therein, the court found the following facts: That the defendant had been personally served with the above-mentioned order to show cause; that he had failed to comply with the terms of the amended judgment; that he had failed to pay alimony for the months of December 1955 through May 1956; and that he had failed to make payments to the Staples State Bank in the amount of approximately $500; also that he is employed as a locomotive engineer and is capable of earning sufficient income to comply with the judgment but that he had wilfully and deliberately absented him-

self from his employment and thereby reduced his earned income so as to render him incapable of financially complying with the terms of the judgment. The court also found that defendant has wilfully committed constructive contempt of the court and should be found guilty of such constructive contempt. The court then concluded that the defendant be adjudged guilty of constructive contempt and should be punished. The court stayed the sentence and punishment until August 9, 1956, upon the following terms: That before July 1 defendant should pay the sum of $75 to the Staples State Bank, and also $75 to the plaintiff; that payments of like amounts should also be paid on July 15 and on August 1, 1956; and that he should appear before the court on August 9 to be dealt with in such manner as the court might then see fit.

While this order is somewhat confusing, subsequent proceedings indicate that the court meant that defendant could purge himself of the contempt if he made the payments provided for in the order.

On August 9 the court held a further hearing but defendant did not appear. At that time an affidavit was filed from the president of the Staples State Bank which recited that payments on the note were delinquent as of August 2 to the extent of $861.30. The court also took the testimony of Luella B. Clausen. She said that the defendant had not paid her the $75 payments and that the last time he had paid anything was about November 15, 1955. The court also stated for the record that it had taken cognizance of the above-referred-to affidavit of the president of the Staples State Bank.

A judgment was then filed on August 9 but dated August 7. This judgment incorporated the terms and provisions of the order issued pursuant to the hearing which had been held on May 26. Subsequently an order dated August 16, 1956, was filed on August 20. This order provided, among other things, that the defendant had been found guilty of constructive contempt; that the court in its order of May 26 had given the defendant an opportunity to purge himself of this contempt by making the payments provided for therein; that the defendant had failed to do so and that he had not complied in any way with the terms of the order of May 26. The order further provided that the clerk should forthwith issue a warrant to the sheriff of Todd County commanding him to apprehend the defendant and commit him to the

county jail until he should make the payments provided for in the judgment, but in no event to exceed six months. The order also stated that the warrant of commitment to be issued should comply in all respects with the provisions of M. S. A. 588.12. Pursuant to this order a warrant was issued and the defendant was arrested and placed in the Todd County jail.

On appeal to this court defendant raises numerous objections under which he contends that the proceedings on and after May 26 were invalid. After considering all such objections, we deem it necessary to discuss only the following three for a determination of this case:

(1) That the defendant was not personally before the court at any stage of the proceeding leading to his commitment to jail and that under M. S. A. c. 588 the court is without jurisdiction to have him placed in jail unless he had personally appeared before the court and been examined by the court;

(2) That a person may not be committed to jail for contempt of court because of his failure to pay alimony where the incapacity to pay is due to the defendant's absenting himself from his employment; and

(3) That in any case a person may not be confined to jail under contempt proceedings for failure to make payments on a note.

■ In regard to the first issue defendant contends that, when he did not appear in response to the order to show cause returnable May 26, 1956, the only action the court could take was to order his arrest or continue the matter and again order him to appear.

On the other hand the plaintiff contends that under § 588.04 the court could commit the defendant to jail upon notice or order to show cause without a previous arrest. Section 588.04 reads as follows:

"In cases of constructive contempt, an affidavit of the facts constituting the contempt shall be presented to the court or officer, who may either issue a warrant of arrest to bring the person charged to answer or, without a previous arrest, upon notice, or upon an order to show cause, which may be served by a sheriff or other officer in the same manner as a summons in an action, may commit him to jail, impose a fine, or both, and make such order thereupon as the case may require."

Plaintiff contends that this section allows alternative methods of procedure. In other words, she argues that it was within the discretion of the court either to do what it did in the instant case or what the defendant claims it should have done.

The defendant maintains, however, that § 588.04, when read with §§ 588.09, 588.10, and 588.14, clearly requires that the accused must appear personally before the court may have him placed in jail. These statutes read as follows:

§ 588.09. "When the person arrested has been brought into court, or has appeared, *the court or officer shall investigate the charge by examining him*; and the witnesses for and against him, for which an adjournment may be had from time to time, if necessary." (Italics supplied.)

§ 588.10. "*Upon the evidence so taken, the court or officer shall determine the guilt or innocence of the person proceeded against* and, if he is adjudged guilty of the contempt charged, he shall be punished by a fine of not more than $250, or by imprisonment in the county jail, workhouse, or work farm for not more than six months, or by both. In case of his inability to pay the fine or endure the imprisonment, he may be relieved by the court or officer in such manner and upon such terms as may be just." (Italics supplied.)

§ 588.14. "When a warrant of arrest has been returned served, if the person arrested does not appear on the return day, the court or officer may issue another warrant, or may order the recognizance prosecuted, or both. If the recognizance is prosecuted, the measure of damages shall be the amount of the loss or injury sustained by the aggrieved party by reason of the misconduct for which the warrant was issued and the costs of the proceeding."[1]

We agree with the contention of the defendant. In § 588.09 mandatory language is used directing the court or officer to examine the

---

[1]This statute indicates the necessity for an appearance before a defendant may be placed in jail in that, even where the court has issued a warrant, if the person arrested does not appear on the return day the statute does not authorize the court to order him placed in jail but authorizes only the issuance of another warrant or the prosecution of the recognizance.

person. Next, § 588.10 gives the court the power to adjudge the guilt or innocence of the party proceeded against but it does so *only upon the evidence so taken.* The words *evidence so taken* can *only* refer to the examination required in § 588.09. Thus it is clear that the district court is without the power to adjudge a person guilty of contempt unless he has first been brought before the court and examined.

In other words, the court cannot act upon facts within its own knowledge or information obtained outside of the orderly course of trial or upon the affidavit upon which the warrant issued, for it is not competent evidence against the accused upon his trial. It must proceed to investigate the charge by examining him.

The affidavit or evidence required to be presented to the court under § 588.04 in the first instance is for the sole purpose of procuring the order citing the party to appear or the warrant to bring him before the court. State ex rel. Russell v. Ives, 60 Minn. 478, 62 N. W. 831.

The plaintiff further contends, however, that a distinction should be drawn between civil and criminal contempt and that, where a civil contempt is involved, action such as was taken by the district court in the case at bar is proper, citing State ex rel. Hurd v. Willis, 61 Minn. 120, 63 N. W. 169. That case involved a writ of certiorari to review contempt proceedings. A motion was made by one Anna A. Hurd and among other things sought an order directing William J. Hurd to pay alimony as had theretofore been ordered by the court and in the event William J. Hurd failed to comply with such order that he be punished for contempt of court. After holding a hearing at which William J. Hurd was present, the court issued a formal order adjudging: (1) That William J. Hurd was guilty of contempt for lack of compliance with previous orders of the court for payment of alimony and ordered that he be fined the sum of $125, and if he failed to pay that he be committed to the county jail until he paid the fine, but not to exceed six months; (2) that he pay $500 theretofore allowed by the several orders of the court to the defendant, and if he refused to pay he should be placed in the county jail and imprisoned therein until the amount was fully paid. A motion was made on behalf of Anna Hurd to quash the writ of certiorari on the ground that the order was appealable. The court held that the order was really two orders in one, in that the first section of the

order sought to punish Hurd for a criminal contempt and the second section for a civil contempt. Therefore the court pointed out that the only question that could be reviewed was the first section of the order, namely for criminal contempt. Thus it is true that the court in that case did draw a distinction between civil and criminal contempts but only for the purpose of deciding the manner of review in this court. We find nothing in that case, as contended by the plaintiff here, which would indicate that in cases of civil contempt the accused may be found guilty of civil contempt and sentenced by the district court without first having appeared before the court for the purpose of being examined.

It is therefore our opinion that the trial court erred in finding the defendant guilty of constructive contempt and ordering him to be placed in jail without first examining him in person. Our holding in this respect does not mean that a person may defiantly or freely disregard an order to appear before the court. Where it is found upon the examination of the accused that there was no justification for his failure to appear, the court may punish him for criminal contempt for disregarding the order to appear and may also order him to be imprisoned until such time as the alimony or support payments are made.

■ The second issue to be determined is whether a person can be found guilty of contempt for failing to abide by a court order directing him to make alimony and/or support payments when he is unable to comply with the order but such inability is due to lack of work, voluntary or involuntary.

M. S. A. 588.12 reads as follows:

"When the contempt consists in the omission to perform an act which is yet in the power of the person to perform, he may be imprisoned until he performs it, and in such case the act shall be specified in the warrant of commitment."

In the case at bar the court found that the defendant was employed as a locomotive engineer and was capable of earning sufficient income to comply with the judgment but that he had wilfully and deliberately absented himself from his employment, thus rendering him incapable of financially complying with the terms of the judgment.

On appeal defendant contends there is no finding that there was an omission to perform an act which was yet in his power to perform

as required by § 588.12. In fact he contends the court found in effect that it was not in his power to make payments when it found he had rendered himself "incapable financially of complying with the terms of said judgment." In reality it would therefore appear that what defendant is being punished for is his refusal to work in order to earn sufficient money to be capable of complying with the court's order.

In Webb v. Webb, 140 Ala. 262, 37 So. 96, it was held that, where a husband has the means to pay alimony awarded his wife and wilfully and contemptuously refuses to do so, he may be compelled to do so by attachment; but he cannot be so compelled when he is without means to pay such alimony, although his want of means results from the wilful refusal to work. In so holding the court stated (140 Ala. 267, 37 So. 97):

"* * * If complainant would not labor, the court was without power to inflict corporeal punishment to compel him. * * * In any effort in this direction it might undertake, the court would be careful not to violate the law against peonage for the sake of earning money. Such an effort, if undertaken, might involve the court and its agents in trouble, * * *."

In Ex parte Todd, 119 Cal. 57, 50 P. 1071, where the court had made finding very similar to those dealing with the pertinent issue in the case at bar it was held that the order was clearly in excess of the power of the court, which cannot compel a man to seek employment in order to earn money to pay alimony, and punish him for his failure so to do. In this connection see, also, In re Brown, 136 Cal. App. (2d) 40, 288 P. (2d) 27.

Therefore it is our opinion that the district court erred with respect to this issue in that there is no finding that defendant has the present ability to pay. If there had been a proper finding that he had the present ability to pay but refused to do so he could have been punished under §§ 588.10 or 588.12. We are not deciding whether a party who wilfully refuses to comply with an order for the payment of alimony or one who stubbornly, defiantly, and rebelliously renders himself unable to obey the decree by refusing to perform his regular work, or who purposely and wilfully reduces his income with the intent of defying the court and evading alimony obligations, can successfully plead in-

ability to pay as a defense in contempt proceedings as that question is not before us in the instant case.

For a full discussion of this issue see: 18 Minn. L. Rev. 45, 48, 49; Annotations, 22 A. L. R. 1256, 1265; 31 A. L. R. 649, 652; 40 A. L. R. 546, 549; 76 A. L. R. 390, 395.

■ The third issue is whether the court had the power to order the defendant, as a part of the divorce decree, to make payments on a note and upon his failure to make such payments order him placed in jail for contempt.

In the instant case it appears from the record that subsequent to the original judgment defendant executed a $4,100 note to the plaintiff to be paid at the rate of $100 per month. This note was then endorsed to the Staples State Bank. Following this and upon stipulation of the parties, an amended judgment was entered which ordered that the defendant should pay to the Staples State Bank the sum of $100 per month on the first day of each and every month until said note and interest thereon is entirely paid.

Minn. Const. art. 1, § 12, so far as is pertinent, reads as follows: "No person shall be imprisoned for debt * * *." An obligation to pay alimony under a divorce decree is not a *debt* within the above section. Wojahn v. Halter, 229 Minn. 374, 39 N. W. (2d) 545. The term "debt" as used in Minn. Const. art. 1, § 12, means an obligation to pay money for something due and owing from one to another arising out of a contract, express or implied. State ex rel. Johnson v. Becht, 23 Minn. 1; Wojahn v. Halter, *supra.*

Pertinent also to this issue is whether future alimony payments may be assigned. Our court in Cederberg v. Gunstrom, 193 Minn. 421, 258 N. W. 574, 97 A. L. R. 207, left the question open as to whether future alimony payments were assignable. However, the weight of authority in this country is that future alimony payments may not be assigned. See, 2 Nelson, Divorce and Annulment (2 ed.) § 14.08, and Annotation, 97 A. L. R. 208.

This court has also stated that a court has no power to compel a husband, when defendant in a divorce suit, to pay a mortgage on his homestead. Dorsey v. Dorsey, 142 Minn. 279, 171 N. W. 933. See, also, 2 Nelson, Divorce and Annulment (2 ed.) §§ 14.64, 14.65; Collins v.

Superior Court, 48 Ariz. 381, 62 P. (2d) 131.

Here we are not only dealing with a court order compelling the defendant to make payments on an obligation arising out of a promissory note, but this note has been endorsed to a third party. Furthermore, the defendant has been ordered to make payments to the third party rather than to the former wife. Therefore it must be held that the district court does not have the power to order that a defendant in a divorce proceedings make payments on a note and, if he fails to do so, that he be placed in jail.

This is especially so since there is no apparent reason why the district court cannot accomplish the desired results in a proper manner. For example, in the instant case the court instead of ordering alimony payments of $100 per month and payments of $100 per month to the bank could have ordered alimony in the amount of $200 a month or it could have awarded her a lump sum sufficient to retire the note, payable to plaintiff at the rate of $100 per month.[2] This procedure would avoid the constitutional difficulties arising out of a court's ordering a defendant to make payments on a note and, on his failure to do so, ordering him placed in jail.

Reversed.

---

[2] In so doing the limitation on the amounts of alimony and property division must be taken into account as provided in M. S. A. 518.56 to 518.60.