In Re the Marriage of Nancy Josephine VITALIS, petitioner, Respondent,

v.

George Evan VITALIS, Appellant.

No. C6–84–1503.

Court of Appeals of Minnesota.

Jan. 29, 1985.

**58**

M. Sue Wilson, Wilson & Pomerene, P.A., Minneapolis, for respondent.

Barry Lazarus, Lazarus & Smith, Minneapolis, for appellant.

Heard, considered and decided by CRIPPEN, P.J., and FORSBERG and RANDALL, JJ.

## OPINION

FORSBERG, Judge.

Nancy Vitalis moved for an increase in child support and for an order requiring George Vitalis to pay approximately $12,000 of arrearages. George Vitalis countered with a motion for change of custody, forgiveness of arrearages, and termination of future support obligations. The trial court declined to modify custody, ordered payment of the arrearages, granted an increase in support, and awarded attorney fees to the mother, and the father appealed. We affirm.

## FACTS

George and Nancy Vitalis were divorced in 1975. Respondent was granted custody of Adam, born November 24, 1970. Appellant was ordered to pay child support of $270 per month.

The child lived with appellant during several periods when respondent was out of the state for various reasons. The parties agreed no support was due during those times. Appellant stopped making child support payments at all, however, in June 1979, even though Adam was then living with respondent. Appellant claims he reached an agreement with respondent which terminated his support obligation. Respondent denies the existence of such an agreement.

Appellant is self-employed as a C.P.A. and also deals in real estate developments. His 1975 income from his accounting practice was $7,500. His 1982 gross income from his accounting practice was $119,400, and his investment activities yielded losses which he used to reduce his income tax obligation. His net worth, as shown on a financial statement prepared by him, was $487,400. His actual income—that is, the money he has available to meet expenses—is difficult to determine from the record. He claims that recent conditions in the real estate market have nearly ruined him, forcing him to borrow money to meet his operating expenses. The trial court made the following finding regarding appellant's income in 1982:

### XV

The ability to pay child support is as follows:

a. Husband's income as CPA: 1979 $ 49,000
1980 72,000
1981 106,000
1982 119,400

b. Husband's investment income 1982:           [ gross]
Valley Associates $ 7,146 loss [$93,000]
Franconia Associates 24,779 all partners
Scenic Valley Associates 6,914
Cromwell Associates 9,037

The losses listed are the result of real estate investments of the husband with others and include depreciation and other allowable deductions. The properties are rentals and construction units for sale. Losses have been used to reduce his tax liability.

In addition the husband has had his office in one of the buildings owned by one of the partnerships and has charged the expenses of that office as part of his personal income.

Appellant's income tax return for 1982 indicates that, after all income and all losses were taken into account, his adjusted gross income was negative $29,126.

Respondent is also self-employed as a psychologist and acupuncturist. Her 1983

gross income from her practice was $32,-802. After business expenses of $21,320, her adjusted gross income for 1983 was $11,482.

## ISSUES

1. Was the trial court's denial of appellant's motion for change of custody warranted by the evidence?

2. Did the trial court err in increasing child support to $450 per month?

3. Did the trial court err in awarding child support arrearages of approximately $12,000?

4. Did the trial court err in awarding attorney fees of $1700 to respondent?

## ANALYSIS

■ *1. Custody:* The trial court found that appellant had not reached the threshold required in order for a custody study and its attendant evidentiary hearing to be necessary. *See Nice-Peterson v. Nice-Peterson,* 310 N.W.2d 471 (Minn.1981). While appellant sought sole physical custody of the child at the hearing, on appeal he pursues only joint legal custody, with primary physical custody to remain with respondent. Minn.Stat. § 518.003, subd. 3(b) (1982) defines "joint legal custody" as giving both parents equal rights and responsibilities to participate in major decisions determining the child's upbringing, including education, health care and religious training. Here, the trial court's order requires respondent to notify appellant of all major events in the child's educational, religious and social life and ensures his access to the child's medical and school records. Testimony of both parties indicated that the parties have always made major decisions jointly. Thus, it does not seem that changing the name of the relationship to "joint legal custody" would make any difference. Further, testimony indicated no change in the parties' relationship with respect to the child. Technically, then, there is no cause to change custody. It thus cannot be said that the trial court erred in declining to change the name of the custody status.

*2. Support:* The trial court found that appellant had substantially increased earnings and respondent and the child had increased need, justifying an increase in child support. Appellant argues that he did not, in fact, have increased earnings, nor did respondent have increased need.

Appellant's financial situation is not simple. It is clear that his cash flow has increased significantly since the time of the divorce, even if his income has not. The court's findings on appellant's income are supported by the record; it is true, however, that the figure the court found appellant had earned from his accounting practice was *gross,* not net, whereas the respondent's income, as found by the court, was net. If one looks only at gross receipts, appellant's income increased greatly—from $12,516 in 1975 to $119,400 in 1982. Net income did not, but the record shows that many of appellant's expenses and losses were merely "paper," and that appellant's life-style is commensurate with his cash flow, not his taxable income.

■ A substantial increase in the noncustodial parent's income, alone, is sufficient to warrant an increase in child support. Minn.Stat. § 518.64, subd. 2 (Supp. 1983). The standard of review applicable to modifications of child support is that this court will not reverse absent a showing of "clear abuse" of the trial court's discretion. *Johnson v. Johnson,* 304 Minn. 583, 232 N.W.2d 204 (1975). The trial court's decision is reasonable, given the financial status of the parties.

*3. Arrearages:* The trial court awarded over $12,000 in child support arrearages to respondent. Appellant contends that this was improper, since, he argues, respondent had waived her right to those payments by agreement or by inaction.

■ The court's finding that there had been no agreement to abate child support was supported by respondent's testimony, and was a proper determination of credibility by the court. Further, collection of the arrearages is not barred by laches. A lack of diligence in collection by respondent can-

not defeat appellant's continuing support obligation, since the focus of a support obligation is on the needs of the child, not the diligence of the custodial parent. Minn.Stat. § 518.64, subd. 2 states that "[a] modification which decreases support or maintenance may be made retroactive only upon a showing that any failure to pay in accord with the terms of the original order was not willful." Appellant has failed to make such a showing. The proper procedure to follow if a non-custodial parent wishes to have a support obligation reduced is to move the court for a reduction. Self-help is not favored.

■ *4. Attorney fees:* The trial court ordered appellant to pay $1700 for respondent's attorney fees. Such an award is authorized by statute, and "rests almost entirely in the discretion of the trial court." *Kirby v. Kirby,* 348 N.W.2d 392, 394 (Minn. Ct.App.1984).

### DECISION
The trial court's decisions on custody, child support and arrearages, and attorney fees were not an abuse of discretion.

Affirmed.