In re the Marriage of Richard C.
WARWICK, petitioner, Appellant,

v.

Ann WARWICK, Respondent.

Nos. C4–88–2173, C5–88–2456.

Court of Appeals of Minnesota.

April 11, 1989.

**674**

Richard G. Nadler, Michael K. Hoverson, Richard G. Nadler and Associates, St. Paul, for appellant.

William E. Haugh, Jr., Sarah J. Batzli, Collins, Buckley, Sauntry & Haugh, St. Paul, for respondent.

Heard, considered and decided by HUSPENI, P.J., and CRIPPEN and KALITOWSKI, JJ.

## OPINION

HUSPENI, Judge.

Appellant, Richard C. Warwick, alleging that the referee's findings were correct, appeals the trial court's vacation of those findings, the trial court's award of rehabilitative maintenance to respondent Ann Warwick and the postponement of respondent's obligation to pay off appellant's lien on the former marital homestead. We affirm.

1. Respondent has received a public assistance

## FACTS

The parties were married in July 1971. Respondent paid for living expenses while appellant completed his undergraduate education. Appellant's tuition was paid by the G.I. Bill. In 1976 appellant obtained employment, the parties' first child was born and respondent agreed to become a full-time homemaker. Additional children were born to the parties in 1978 and 1980.

The parties separated in June 1981 and the marriage was dissolved June 10, 1983. At that time, appellant earned approximately $24,000 per year as a Minneapolis building inspector. By stipulation, respondent was granted custody of the children and was granted fee interest in the homestead subject to appellant's lien for half of the homestead's equity. The decree required that appellant's lien be paid when respondent sold the house or in June 1992, whichever occurred first. Also, while respondent did not request maintenance at the time of dissolution, for "tax reasons" appellant's financial obligations under the decree were as follows:

| | Child Support | Maintenance |
|---|---|---|
| May 1, 1983–April 1, 1984 | $200 | $300 |
| May 1, 1984–May 1, 1988 | $250 | $250 |
| June 1, 1988 | $467 | -- |

Additionally, the decree established child support and maintenance obligations and specifically reserved respondent's right to request rehabilitative maintenance until June 1, 1988. It stated:

rehabilitative spousal maintenance shall be independent of the spousal maintenance and child support awards hereinabove and otherwise herein payable.

Because appellant did not make support and maintenance payments, Ramsey County instituted wage withholding.[1] However, in September 1986 appellant resigned from his job (then paying $28,000 per year) claiming he was "burned out" and that he wanted to become an independent building inspector.

Since his resignation, appellant has paid no support or maintenance. In February 1988 Ramsey County moved to find appel-

grant from Ramsey County since June 1981.

lant in contempt for failure to meet his support and maintenance obligations. At the April 12, 1988 hearing, it was determined that appellant was in arrears $3,750 on his child support and $4,050 on his spousal maintenance through January 31, 1988. While appellant purchased a new van for his building inspection business, he had trouble accounting for the rest of the $26,000 pension distribution he received upon resigning his position as a city building inspector. Also, it was determined that appellant had approximately $3,000 in his checking account. Appellant alleged that he did not have sufficient income to meet his support and maintenance obligations because his business generated net monthly income of only $660.

Appellant was found in constructive contempt of court and was sentenced to 60 days in the workhouse, with execution of sentence stayed for two years contingent upon his compliance with a new payment schedule.

On April 26, 1988, respondent moved the court for rehabilitative spousal maintenance and a postponement of her obligation to satisfy appellant's lien on the homestead until the youngest child reaches age 18 as security for appellant's child care obligation. Having obtained a financial aid package which covered all her tuition at Hamline University, respondent sought rehabilitative maintenance to aid with the additional expenses associated with the completion of her undergraduate education. Respondent also has indicated that she wishes to attend Hamline University School of Law.

The referee denied respondent's request for rehabilitative maintenance indicating that appellant did not have sufficient income but did not rule on respondent's request for extending her obligation to pay off appellant's lien.

The district court, after consideration of additional memoranda, awarded respondent $350 per month in rehabilitative maintenance and extended her obligation to pay off appellant's lien to 1998. The trial court's order also directed appellant to get a job, report on his efforts to do so and found him in contempt for failing to make maintenance payments from February 1988 to April 1988. Appellant's incarceration was stayed upon his compliance with the terms of the order.

## ISSUES

1. Did the trial court err in its consideration of the referee's findings?

2. Did the trial court abuse its discretion in awarding respondent $350 per month in rehabilitative maintenance?

3. Does postponing respondent's obligation to pay off appellant's lien on the homestead violate Minn.Stat. § 518.64, subd. 2?

4. Does the trial court's order requiring that appellant seek and obtain employment violate constitutional prohibitions against involuntary servitude?

5. Does the trial court's order threatening appellant with incarceration if he does not meet his support and maintenance obligations violate the state constitutional prohibition against imprisonment for indebtedness?

## ANALYSIS

### I.

The parties disagree regarding the trial court's scope of review of the referee's proposed findings and order and this court's scope of review of the trial court determinations.

With regard to a family court referee's proposed findings and order, "[t]he trial judge [is] completely free to exercise his judgment and discretion." *LaBelle v. LaBelle*, 296 Minn. 173, 176, 207 N.W.2d 291, 293 (1973).

Family court referees for the Second Judicial District are statutory, authorized by Minn.Stat. § 484.64, subd. 3 (1986). Second Judicial District Special Rule 17 §§ 1.06 and 1.07 provide for the routine reference of family court matters to referees. Minn. R.Civ.P. 53.02, however, indicates that "[a] reference to a referee shall be the exception and not the rule." Therefore, a conflict exists between the two rules. *See*

*Peterson v. Peterson,* 308 Minn. 297, 302–03, 242 N.W.2d 88, 92–93 (1976). Noting that Second Judicial District Special Rule 17 § 1.01 states:

> The Minnesota Rules of Civil Procedure for the District Courts of Minnesota shall apply to practice in the Family Court Division except where in conflict with applicable statutes,

the *Peterson* court resolved the conflict stating:

> Proceedings in the family court which involve the routine use of referees must * * * be regarded as special *statutory* proceedings.

*Id.* at 304, 242 N.W.2d at 93 (emphasis added). As a result,

> all recommended findings and orders of a family court referee * * * are advisory only and possess no more than prima facie validity.

*Id.* Therefore, the "family court judge has the duty and ultimate responsibility for making an informed final and independent decision," *id.* at 306, 242 N.W.2d at 94, because the proposed findings and order of a family court referee will carry

> only such weight and persuasive force as their merits demand and the properly exercised discretion of the family court judge warrants.

*Id.*

The *Peterson* analysis, originally limited to a custody context, was later expanded to "other matters before the family court." *Berg v. Berg,* 309 Minn. 281, 285, 244 N.W.2d 149, 151 (1976). Also, this court has made clear that "[t]he trial court judge *may* receive further evidence when reviewing the referee's report." *In re Jensen,* 414 N.W.2d 742, 744 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Jan. 15, 1988) (emphasis in original).

With regard to this court's review of the trial court's order,

> [t]his court's scope of review * * * is rather narrow. The decision to modify a child support order lies in the broad and sound discretion of the trial court, and an appellate court will reverse for an abuse of that discretion only where it finds a

"clearly erroneous conclusion that is against logic and the facts on record." *Olson v. Olson,* 399 N.W.2d 660, 662 (Minn. Ct.App.1987) (quoting *Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn.1984)). We note that this scope of review is consistent with the recently amended Minn.R.Civ.P. 52.01 (effective Jan. 1, 1989) which, in part, states:

> Findings of fact, *whether based on oral or documentary evidence,* shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

(Emphasis added.) *Reprinted in* 48 Minn. Stat.Ann. 219–220 (West Supp.1989).

■ Unless we determine them to be clearly erroneous, this court is bound by the trial court's findings of fact. *See Peterson v. Peterson,* 308 Minn. 297, 242 N.W.2d 88.

## II.

■ Appellant argues that the trial court's award of $350 per month rehabilitative maintenance was an abuse of discretion. We disagree.

When the issue of maintenance is reserved for determination at a later date pursuant to Minn.Stat. § 518.55, subd. 1 (1986), the subsequent determination

> must be based upon the facts and circumstances existing at the time the application is made, as if the entire action had been brought at the later date.

*Harder v. Harder,* 312 Minn. 300, 302, 251 N.W.2d 703, 704 (1977) (footnote omitted).

The trial court made the following findings:

> The parties' children were ages 2, 4 and 6 at the time of the dissolution; the respondent was unable either to obtain full-time employment which would cover her expenses or to attend school. * * * She received a full tuition scholarship from Hamline University for the continuation of her undergraduate studies. She is likely to be terminated from AFDC in October of 1988. * * *

(a) Respondent has no financial resources; she is receiving AFDC;

(b) Respondent has completed only two years of undergraduate work and obviously has demonstrated the capacity to complete her college work and graduate studies;

(c) The parties enjoyed a comfortable standard of living while the [appellant] was steadily employed;

(d) After the respondent worked to put the [appellant] through college, the parties made a decision that she should remain home to care for the parties' young family; she had been out of the labor market for five years at the time of the dissolution and was the mother of a nursing infant;

(e) If the respondent had gone to college immediately after the [appellant] had completed his education or simultaneously, she would be in a position to be self-sufficient at this time.

(f) N/A

(g) The [appellant] has the ability to earn a sufficient income to pay the maintenance sought; his testimony during the contempt hearing as to cash flow is not credible.

(h) The respondent worked while the [appellant] went to school and thus contributed to the earning capacity which [appellant] possesses.

The court's findings are consistent with the record and fulfill the statutory criteria set forth in Minn.Stat. § 518.552, subds. (1) and (2) (1986).

In arguing that the amount of maintenance is excessive and unfair, appellant maintains that the court must consider the lower standard of living respondent would have endured had the parties been married when appellant resigned from the city. This argument's implicit assumption that appellant would have resigned from his job even if the parties remained married is speculative and not persuasive.

■ With regard to those factors which the trial court did consider in establishing the maintenance award, this court has indicated

[a] trial court may properly consider a party's earning capacity and earnings history to determine that party's ability to comply with child support orders. * * * Earning capacity is an appropriate measure of income when * * * the obligor's income is unjustifiably self-limited.

*Veit v. Veit,* 413 N.W.2d 601, 605 (Minn.Ct. App.1987) (citations omitted). *See also LeTendre v. LeTendre,* 388 N.W.2d 412, 416 (Minn.Ct.App.1986) ("The trial court may properly consider earning capacity and earnings history to determine a party's ability to comply with a child support order"). We find this rationale persuasive also in cases involving maintenance, and consistent with the statutory requirement that maintenance determinations include an evaluation of

the *ability* of the spouse from whom maintenance is sought to meet needs while meeting the needs of the spouse seeking maintenance * * *.

Minn.Stat. § 518.552, subd. 2(g) (1986) (emphasis added); *see also Doherty v. Doherty,* 388 N.W.2d 1 (Minn.Ct.App.1986) (where obligor spouse found not employed in good faith and to have artificially lowered his monthly income from $1,200–$1,400 to $293, this court refused to alter monthly maintenance award of $500 plus 50% of net taxable income in excess of estimated earning capacity).

While the trial court did not explicitly find appellant's resignation and reduction of income to be in bad faith, it did rely on statements made by the referee at the contempt hearing to the effect that:

Mr. Warwick hasn't paid a penny in child support or spousal maintenance—has three minor children—during the past nineteen months. He currently has a checking account balance of over $3,000. He received a pension distribution of $26,000. He used that money to purchase things. He is current in all of his obligations, but he hasn't paid one red penny in support for his children for nineteen months. That's egregious; it's outrageous, Mr. Warwick. It's contempt of court. Sixty days in the workhouse.

Also, the trial court specifically concluded that

> [appellant] had the earning capacity to pay maintenance in the amount of $350 per month commencing May 1, 1988 through the payment due May 1, 1992.

It is evident that the trial court believed that appellant unjustifiably limited his income. This is effectively a finding of bad faith on appellant's part and while such a finding is serious in nature, it is not unwarranted. The trial court did not err in considering appellant's earning capacity rather than his actual income in determining his maintenance obligation.

Relying on *Crampton v. Crampton*, 356 N.W.2d 768 (Minn.Ct.App.1984), appellant also argues that because he has paid maintenance for a period of time (5 years) equal to half of the time the parties were married (10 years), there is no "just reason" for him to continue paying maintenance. Such an argument stems from a misreading of *Crampton*, which does not state that maintenance should be paid for a period equal to one half the duration of the parties' marriage. Such a rule would be inconsistent with the maintenance statutes. *See* Minn. Stat. §§ 518.552, subd. 2, 3; 518.64, subd. 2 (1986).

## III.

> [A]ll divisions of real and personal property * * * shall be final, and may be revoked or modified only where the court finds the existence of conditions that justify reopening a judgment under the laws of this state * * *.

Minn.Stat. § 518.64, subd. 2 (1986).

> Under this statute property divisions are final and are not subject to modification except where they are the product of mistake or fraud. * * *

*Kerr v. Kerr*, 309 Minn. 124, 126, 243 N.W.2d 313, 314 (Minn.1976).

■ Appellant argues that because his homestead lien was a property interest and because Minn.Stat. § 518.64, subd. 2 precludes the trial court from modifying a property interest, the trial court erred in postponing payment of the lien. We disagree.

The original decree provided:

> the amount of [appellant's] lien interest shall be reduced by any unforgiven arrearages of child support and spousal maintenance * * * at the time said lien is otherwise realized.

We agree with appellant that awards to the parties of interests in the homestead are "unquestionably a division of property" and therefore cannot be modified. *Kerr* at 126, 243 N.W.2d at 314; Minn.Stat. § 518.64, subd. 2. However,

> there is a second aspect to this division of property and that is the postponement of [the lien holding party's] realization of his [interest] * * * and that it was subject to a set off for arrearages in child support.

*Id.* at 127, 243 N.W.2d at 315. The *Kerr* court, noting that such an arrangement "operated to continue the occupancy of the homestead by the parties' minor children," treated this second aspect as an element of the child support award. It concluded:

> the provisions postponing realization of the lien and in effect making it security for the payment of child support clearly made it subject to the modification imposed by the [trial] court.

*Kerr* at 128, 243 N.W.2d at 315. Additionally, this court has stated:

> The exact wording of the conditions placed on the lien is not what is important to their causing a property settlement provision to be characterized as child support. What is important is that the sale of the homestead is postponed * * * to encourage occupancy of the homestead by the children and to make the lien security for the payment of child support.

*Thomas v. Thomas*, 356 N.W.2d 76, 79 (Minn.Ct.App.1984).

The decree provision making the lien security for appellant's child support and maintenance obligation makes the lien similar to that described in *Kerr* and *Thomas*. *See* Minn.Stat. § 518.64, subd. 2 ("The court may impose a lien or charge on the divided property at any time * * * for the

payment of maintenance or support * * * "). Therefore, appellant's delayed realization of his interest in the homestead may be characterized as child support and modified by the trial court under Minn.Stat. § 518.64, subd. 2. We find no abuse of trial court discretion.

## IV.

■ The thirteenth amendment to the United States Constitution states "[n]either slavery nor involuntary servitude * * * shall exist within the United States." U.S. Const. amend. XIII, § 1. In Minnesota, "[t]here shall be neither slavery nor involuntary servitude * * *." Minn. Const. art. I, § 2.

Appellant argues that the trial court order requiring him to make and report on efforts to find a new job violates state and federal constitutional prohibitions against involuntary servitude.

Minnesota courts have not addressed the issue of whether ordering a party to find employment for payment of support or maintenance constitutes involuntary servitude. However, other jurisdictions have concluded that such an order does not violate prohibitions against involuntary servitude. *See Freeman v. Freeman*, 397 A.2d 554, 557 n. 2 (D.C.App.1979) (reviewing court rejected as meritless appellant's argument that the trial court's order directing him to seek "gainful employment commensurate with his abilities and educational background" violates the constitutional prohibition against involuntary servitude); *see also Hicks v. Hicks*, 387 So.2d 207, 208 (Ala.Civ.App.1980), *writ denied* 387 So.2d 209 (Ala.1980) ("A court order in a divorce judgment directing one party to pay alimony to the other party does not impose involuntary servitude upon the payor"); *In re Marriage of Smith*, 77 Ill.App.3d 858, 864, 33 Ill.Dec. 332, 337, 396 N.E.2d 859, 864 (Ill.App.1979) (husband's argument that requiring him to support his ex-wife constitutes involuntary servitude found to be "completely without merit"). We find the rationale of these foreign cases consistent with the present state of Minnesota law and therefore applicable here.

Finally, appellant's reliance on *Clausen v. Clausen*, 250 Minn. 293, 84 N.W.2d 675 (1957) to argue that the court cannot compel a person to work to pay a maintenance obligation is misplaced. In *Clausen*, unlike the present case, there was no finding that the husband had the ability to pay his maintenance obligations. The supreme court stated:

> We are not deciding whether a party who willfully refuses to comply with an order for the payment of alimony or one who stubbornly, defiantly and rebelliously renders himself unable to obey the decree by refusing to perform his regular work, or who purposely and wilfully reduces his income with the intent of defying the court and evading alimony obligations, can successfully plead inability to pay as a defense in contempt proceedings *as that question is not before us.*

*Clausen* at 300–01, 84 N.W.2d at 681 (emphasis added).

## V.

■ Appellant argues that the provision for his incarceration if he fails to comply with the court order's payment provisions violates state constitutional prohibition against imprisonment for indebtedness. Again, we disagree.

While the Minnesota constitution provides that "No person shall be imprisoned for debt * * *," Minn. Const. art. I, § 12, the Minnesota Supreme Court has made clear that:

> The term "debt" as used in Minn. Const. art. 1 § 12, means an obligation to pay money for something due and owing from one to another arising out of a contract, express or implied.

*Clausen* at 301, 84 N.W.2d at 681. Therefore,

> an obligation to pay support for a child * * * or alimony * * * is not a debt within the meaning of the constitutional prohibition against imprisonment for debt.

*Wojahn v. Halter*, 229 Minn. 374, 381, 39 N.W.2d 545, 549 (1949) (citations omitted). Such a rule is consistent with the statutory authorization of contempt proceedings, as

they foreshadow potential incarceration. *See* 1987 Minn.Laws. ch. 403, art. 3, § 78, Minn.Stat. § 518.24 (1988) ("[if] the obligor disobeys the [maintenance or support] order it is prima facie evidence of contempt"); *Gustafson v. Gustafson,* 414 N.W.2d 235, 237 (Minn.Ct.App.1987) ("Minnesota courts have statutory authority to enforce maintenance and child support obligations by imposing sanctions in civil contempt proceedings"); *see also Cox v. Slama,* 355 N.W.2d 401, 403–404 (Minn.1984) and *Barth v. Barth,* 356 N.W.2d 743, 745 (Minn.Ct.App. 1984) (parents held in contempt for failure to pay child support are entitled to counsel when incarceration is a "real possibility"). In view of the supreme court's holding that maintenance and support obligations are not "debt" for which imprisonment is forbidden, the legislature's authorization of contempt proceedings, and the extensive case law implementing those contempt proceedings, including incarceration, we find no violations of the constitutional prohibitions against imprisonment for indebtedness.

To the extent appellant complains that the trial court's order imposes garnishment exceeding the limits imposed by 15 U.S.C. A. § 1673 (1982), we note that this issue was not presented to the trial court and we do not address it. *See Stephens v. Stephens,* 407 N.W.2d 468, 472 (Minn.Ct.App. 1987). However, our review of the record also indicates that addressing this issue on its merits would not alter any of our determinations in this matter.

## DECISION

The trial court did not err in its consideration of the referee's findings, in awarding maintenance or in postponing respondent's obligation to pay off appellant's lien on the homestead. The trial court's order does not violate constitutional prohibitions against involuntary servitude or imprisonment for indebtedness.

AFFIRMED.