**In re the Matter of Nancy J. CURTIS, n/k/a Nancy J. Bolin, Petitioner, Respondent,**

v.

**Gerald L. CURTIS, Appellant.**

**No. C9–89–302.**

Court of Appeals of Minnesota.

June 27, 1989.

174

Thomas L. Johnson, Hennepin County Atty., Theresa Farrell–Strauss, Asst. County Atty., Roy D. Hawkinson, Bloedel, Slade & Hawkinson, Minneapolis, for petitioner, respondent.

Mark E. Fuller, Edina, for appellant.

Considered and decided by FORSBERG, P.J., and FOLEY and HUSPENI, JJ., without oral argument.

## OPINION

HUSPENI, Judge.

From May 1985 through November 1987 appellant Gerald L. Curtis made repeated motions before the trial court for modification of child support and forgiveness of arrearages. He seeks review of several orders issued during that period, arguing that the trial court failed to find a willful reduction in income, and therefore erred in refusing to reduce support or forgive arrears. We affirm in part, reverse in part and remand.

## FACTS

The parties' stipulated dissolution decree of November 23, 1984, provided for guideline child support of $212.70 per month per child. At that time appellant had worked for his employer for over ten years and had a net monthly income of $1,417.

On December 18, 1984, appellant terminated his employment. In January 1985, he sought modification of support, stating he left his job because of a dust allergy, lack of opportunity for advancement, stress from rotating shifts, and a perception that he needed to improve his job skills through additional training. He stated that he would be attending classes in a two year electronic technician course.

The trial court continued appellant's motion for reduction of support and gave him an opportunity to verify his commitment to the plan to upgrade his skills. At the continued hearing in May 1985, the referee found that appellant had presented no evidence that allergies prevented his continued employment, and stated that the minor children should not suffer because appellant sought to better himself. However, the referee did temporarily reduce support to $63.90 per month. The difference between this amount and that set forth in the decree was to accrue as arrearages. In an April 1986 denial of another motion for modification of support and forgiveness of arrearages, the referee noted that the May 1985 order prohibited the county from attempting to collect arrearages until January 1987.[1]

Appellant sought review of the referee's recommended April 1986 order disputing the court's conclusion that he had not submitted sufficient evidence to permit support modification. Relying on *Giesner v. Giesner*, 319 N.W.2d 718 (Minn.Ct.App. 1982), appellant asserted that in its 1985 order the trial court should have determined whether appellant acted in "good faith" when he ceased employment to return to school. All requested relief was denied.

In April 1987, appellant again sought modification of support and forgiveness of arrearages. At the hearing on that motion appellant was ordered to pay temporary support of $105.39 per month and an additional $250.00 per month commencing October 1, 1987, to be applied against arrearages of $11,192.87. The trial court's findings in the August 13 order included the following:

> That there was no substantial change in circumstances from the stipulation and the Judgment and Decree herein to [appellant's] termination of his employment because all of the factors leading to his termination existed and were known to the parties prior to the stipulation and Judgment and Decree herein.

> \* \* \* \* \* \*

> That if [appellant] contemplated such a drastic change in career and income, the matter should have been resolved prior to entering into a final and permanent stipulation and not one month after the entry of the Judgment and decree herein.

> \* \* \* \* \* \*

> That [appellant] should repay the arrearages at the rate of $250.00 per month which will fully discharge the arrearages within 45 months. The Court believes that [appellant] could not manage a greater amount at this time but that a lesser amount would delay repayment for too long of a time period.

---

1. Respondent Nancy J. Curtis, n/k/a Nancy J. Bolin, has been the recipient of an AFDC grant for the minor children during all times relevant to this appeal.

Forgiveness of arrearages was again denied and a hearing was scheduled for November 1987 to review appellant's ongoing ability to pay support. When appellant sought review of the August 13 order, the trial court denied all requested relief and observed:

> The Court has ruled several times that [appellant's] child support obligation should not be reduced, although payments could be made at a reduced level. There is no basis to readdress an issue which has been decided.

Finally, at the continued hearing in November 1987, the referee addressed only the ongoing support obligation, not arrearages, considered the various findings of the prior orders, and citing *Hopp v. Hopp*, 279 Minn. 170, 156 N.W.2d 212 (1968), found that because of appellant's additional training, he would have an increased earning capacity. The referee also found that there had not been such a substantial change in circumstances as to make the terms of the original support obligation unreasonable and unfair and reinstated the support of $212.70 per month per child.

Appellant's notice of appeal seeks review of all trial court orders from May 5, 1985 through November 12, 1987.

## ISSUES

1. Does the scope of review include all the orders beginning with the order dated May 5, 1985, through the order of November 12, 1987?

2. Did the trial court err in denying modification and forgiveness of arrearages for the period covered by the orders dated May 5, 1985 through November 12, 1987?

## ANALYSIS

■ 1. In requesting this court to review the orders issued during 1985, 1986 and 1987, appellant relies on Minn.R.Civ. App.P. 104.01:

> An appeal may be taken from * * * an order within 30 days after service by the adverse party of written notice of filing unless a different time is provided by law.

Nothing in the record shows any service of written notice of filing of any of the orders at issue here. Despite the fact that the first of these orders was dated nearly four years ago, its appeal must be considered to be timely filed under Rule 104.01. *See O'Brien v. Wendt*, 295 N.W.2d 367, 369–70 (Minn.1980).

All orders before us relate to modification of support or forgiveness of .arrearages. Respondent cites *Bledsoe v. Bledsoe*, 344 N.W.2d 892 (Minn.Ct.App.1984) to argue that under these circumstances the issue of forgiveness of arrearages is *res judicata*. We disagree. *Beldsoe* stated "In this matter, no appeal was taken [from the earlier order denying forgiveness of support arrearages] * * * [that] order is *therefore res judicata.*" *Id.* at 895 (emphasis added). Thus Bledsoe's *res judicata* conclusion regarding prior orders presumes that the right of appeal from a prior appealable order has expired. *See id.* at 894–95. Here, because no notice of filing was served, the 30 day time limit for appeal under Rule 104.01 never started running for any order. *Servin v. Servin*, 345 N.W. 2d 754, 757 (Minn.1984). As such, all orders are appealable and the basis for the *Bledsoe res judicata* conclusion is . not present.

While concluding that this appeal is timely as to each order about which appellant complains, we note that the best interests of both parties and the minor children may have been better served if the 30 day time limit under Rule 104 had been appropriately commenced, requiring appeal to be more expeditiously and efficiently sought.

■ 2. A reviewing court will reverse the trial court in child support modification orders only upon a showing of a clear abuse of discretion. *Vitalis v. Vitalis*, 363 N.W.2d 57, 59 (Minn.Ct.App.1985). An abuse of discretion occurs when "the order is arbitrary or unreasonable or without evidentiary support." *Smith v. Smith*, 282 Minn. 190, 193, 163 N.W.2d 852, 856 (1968).

> [W]hen forgiving past due child support, where the interests of children are paramount, the court should be even more

cautious [than with forgiveness of past due maintenance].

*Bledsoe*, 344 N.W.2d at 895 (citation omitted).

■ In the May 6, 1985 order, the referee found that:

On December 18, 1984, the [appellant] voluntarily terminated his employment. He claimed allergies as the reason for the termination. However, the [appellant] had been treating for these allergies since September of 1983 and has presented no evidence that he was unable to continue in his employment due to the allergies.

The burden of proof is on the moving party to show changed circumstances. *Bledsoe*, 344 N.W.2d at 895. In its earlier continuance order, the trial court had already expressed suspicion about appellant's termination of employment of 10 years, less than one month after entry of a dissolution decree. That suspicion was confirmed in the language of the May 6 order.

Evidence before the trial court in appellant's 1986 motions included his affidavit that he quit work because of his allergies and because of a doctor's recommendation. In addition, there was a letter from appellant's physician which discussed his allergies and the possibility that his nasal congestion may have been aggravated by his employment. However, the trial court also had before it in 1986 evidence that appellant had been undergoing treatment for his allergies for a number of years. No evidence of any sudden exacerbation of the condition just prior to quitting was presented.

The parties stipulated to child support based on appellant's current net income in 1984. Less than a month after entry of the dissolution decree, appellant left his employment. Nothing in the record indicates that he discussed this action with respondent or with the court prior to the stipulation, or that he checked on the availability of other employment with comparable pay that would not have required additional training and would not have aggravated his allergies. The trial court in its 1986 orders found appellant's arguments regarding his reasons for leaving his employer unpersuasive. We conclude it was not unreasonable for the trial court to infer that the timing of appellant's job termination was for other than medical reasons.

Appellant argues that under *Hedburg v. Hedburg*, 412 N.W.2d 43 (Minn.Ct.App. 1987), remand is required here on the issue of bad faith reduction of income. We cannot agree. In *Hedburg*, the obligor was involuntarily laid off and unsuccessfully applied for 45 jobs while unemployed. Subsequently, with his unemployment benefits about to run out, he decided to go to a vocational school with a 92% placement rate with a prospective salary comparable to that of his former job. The trial court found the obligor had an opportunity to get a job at minimum wage but opted to go to the Vo–Tech for 18 months instead. *Id.* at 45. The trial court in *Hedburg* was required to make a finding on whether the obligor acted in good faith in limiting his income. *Id.* at 47.

In contrast, here the trial court found that appellant's original job termination was voluntary. After precipitously quitting his job of 10 years, appellant went directly to vocational school, and did so less than a month after entry of the dissolution decree, where in *Hedburg*, the obligor searched extensively and unsuccessfully for other employment before returning to school. Finally, in *Hedburg*, unlike the instant case, the obligor paid full support for more than four years before moving for forgiveness of arrears.

We believe this case is more similar to *Juelfs v. Juelfs*, 359 N.W.2d 667 (Minn.Ct. App.1984). There, in order to develop his own independent business, the obligor voluntarily decided to terminate long time substantial employment which had provided sufficient income to meet child support obligations. The *Juelfs* court found a lack of good faith because obligor was aware at the time he quit that his own business activities had little chance of ever producing close to what his other employment produced. *Id.* at 670.

Appellant knew he would be foregoing substantial income for a period of two

years by not working or by working only part time. The record is not clear about the extent of appellant's knowledge about long-term employment and income prospects after vocational training. However, a letter in the record indicates that gross monthly income for recent graduates in his program was currently $1,393, substantially less than the $1,417 net monthly income he was making at his prior job. It appears appellant knew or should have known that his act of leaving his former job and entering vocational school effectively jeopardized his ability to support the minor children for at least the years he expected to be in school.

None of the trial court orders in this matter makes an explicit determination of lack of good faith. However, under *Warwick v. Warwick*, 438 N.W.2d 673 (Minn.Ct. App.1989), the trial court may be affirmed if it is clear that the trial court believed the obligor has unjustifiably limited his income. *Warwick*, 438 N.W.2d at 677-78.

In the August 13, 1987 order the trial court found:

> That if [appellant] contemplated such a drastic change in career and income, the matter [should] have been resolved prior to entering into a final and permanent stipulation and not one month after the entry of the judgment and decree herein.

Other trial court orders here reviewed refer to and distinguish *Giesner v. Giesner*, 319 N.W.2d 718 (Minn.1982) as an involuntary termination. The November 12, 1987 order explicitly found appellant's termination to be voluntary.

Our review of all orders here appealed convinces us that the trial court effectively found that appellant had acted in bad faith in terminating his previous employment. *Warwick*, 438 N.W.2d at 678. That determination is amply supported in the record.

The trial court's denial of appellant's repeated motions for reduction of child support and forgiveness of arrears was proper.[2] Appellant, as the moving party, had

the burden of proof. *Bledsoe*, 344 N.W.2d at 895. Having such

> He must show 1) a substantial change in circumstances, *and* 2) that none of his past failures to pay were *willful*.

*Id.* (emphasis added). In view of the trial court's effective determination that appellant terminated his employment in bad faith, it would have been impossible for appellant to meet the *Bledsoe* dual requirements.

■ However, we do not end our inquiry with a determination that motions for reduction of child support and forgiveness of arrears were properly denied. Instead, examination of the November 12, 1987, order leaves us with concerns that require remand. First, the purpose of the hearing resulting in the November 12 order was "to review [appellant's] financial ability to pay ongoing child support." In reaffirming the level of support set forth in the decree, the trial court found appellant's net income to be $1,182.30 and recognized that the guideline support on that income would be $354.60. The findings underlying the decision on current child support include:

> In view of the additional training which was the basis for the claim that child support should be lowered and which was in part the basis for temporary lowerings and suspension of child support, the [appellant] does have an increased earning capacity over that which he had when these matters were first placed before the court on the issue of reduction. See *HOPP*, [279 Minn. 170] 156 N.W.2d 212 (1968).
>
> That the matter of the level of child support was a matter of stipulation and the voluntary termination of his last employment was immediately after the entry of the Judgment and Decree.

Clearly, the trial court considered appellant's increased earning capacity in deciding to continue child support at the level set forth in the decree. However, increased earning capacity is not an appropriate measure of income unless "(1) it is

---

2. We note that neither respondent nor the county of Hennepin complains about the temporary reductions in support permitted by the trial court despite its denial of forgiveness of arrearages.

impracticable to determine an obligor's actual income [which does not apply here] or (2) the obligor's actual income is unjustifiably self-limited." *Hedburg,* 412 N.W.2d at 47 (*quoting Beede v. Law,* 400 N.W.2d 831, 835 (Minn.Ct.App.1987)).

The trial court made no finding of continuing bad faith nor of unjustified self-limitation of income in its November 12, 1987, order. If, after appellant's schooling was completed, he made a good faith effort to obtain the most beneficial employment available, it is questionable whether he should continue to be penalized for returning to school. We remand for additional findings on this issue. Further, on remand the trial court is directed to address appellant's ability to pay $250 per month on arrearages pursuant to the August 13, 1987, order while also meeting his obligation to pay current child support.

## DECISION

The trial court's order of November 12, 1987, is reversed and remanded for findings on whether there was a bad faith reduction of income by appellant after he completed his vocational schooling and returned to full-time employment, and findings on appellant's ability to meet both current child support obligations and $250 per month arrearage payment obligations on a net monthly income of $1,182.30.

Affirmed in part, reversed in part and remanded.