**In re the Criminal Contempt Adjudications of Debra BRAUN and Brian Gibson.**

Nos. C3–92–2167, C5–92–2168.

Court of Appeals of Minnesota.

June 29, 1993.

Barry W. McKee, Stillwater, John D. Hagen, Jr., Minneapolis, for appellants Braun and Gibson.

William G. Clelland, Steven C. Hey, Carson and Clelland, Brooklyn Center City Atty., Minneapolis, for respondent State of Minnesota.

Marc K. Kurzman, Kurzman, Grant and Ojala, Minneapolis, for respondent Robbinsdale Clinic.

Considered and decided by PARKER, P.J., and FORSBERG and KLAPHAKE, JJ.

## OPINION

KLAPHAKE, Judge.

These consolidated appeals are from the criminal contempt convictions of appellants Debra Braun and Brian Gibson. We reverse.

## FACTS

Appellants Brian Gibson and Debra Braun, both officers of Pro–Life Action Ministries, participated in protest activities

around the Robbinsdale Clinic, which performs abortions. The clinic sought injunctive relief in August 1992, and the trial court issued a temporary restraining order (TRO) on September 17, 1992. The TRO restricted certain activities outside the clinic.

On October 7, 1992, the clinic brought a motion requesting that some protestors, including Braun and Gibson, be held in civil contempt for violating the TRO. The clinic submitted affidavits, with attached photos showing alleged violations, in support of the motion.

At the motion hearing, the clinic called Gibson as its first witness. His attorney immediately asserted Gibson's Fifth Amendment privilege, noting Gibson was charged with criminal contempt for violating the TRO on September 19. The trial court stated that, at this stage of the civil contempt proceeding, the Fifth Amendment privilege did not apply. The court warned Gibson he could be found in direct criminal contempt for his refusal to answer questions.

Gibson was then questioned by the clinic's attorney and asserted his Fifth Amendment privilege in response to every question. After the clinic had established Gibson's violations of the TRO by other evidence, he was found in direct criminal contempt for his refusal to answer, and sentenced to ten days in jail.

The clinic next called Debra Braun. The court stated it was unaware of any pending criminal contempt charges against Braun. Braun refused to answer all questions, invoking her Fifth Amendment privilege. After several violations were proved by other evidence, the trial court found her guilty of direct criminal contempt, sentencing her to ten days in jail.

The clinic later moved for clarification of the criminal contempt ruling, to make it applicable only to the non-incriminating questions asked of Braun and Gibson. The trial court in effect granted the motion, explaining that its intent was to find Braun and Gibson in contempt only for refusing to answer questions not related to any constructive criminal contempt charges.

## ISSUE

Do the contempt convictions unconstitutionally infringe on Braun and Gibson's Fifth Amendment privilege against self-incrimination?

## ANALYSIS

Braun and Gibson contend they could not be held in contempt for refusal to answer questions which could lead to incriminating evidence against them and possibly subject them to criminal prosecution. We agree.

The privilege against self-incrimination applies in civil as well as criminal proceedings. *Parker v. Hennepin County Dist. Court, Fourth Judicial Dist.*, 285 N.W.2d 81, 82–83 (Minn.1979). The privilege applies not only when the question elicits evidence of a crime, but also when the answer would provide a "link in the chain of evidence" required for prosecution. *Minnesota State Bar Ass'n v. Divorce Assistance Ass'n, Inc.*, 311 Minn. 276, 278, 248 N.W.2d 733, 737 (1976). The witness need not show there is a pending criminal prosecution, only that a chance of prosecution exists. *Id.* "The court and not the witness is the judge of whether there is a tendency to incriminate." *Id.* However, the court should not reject a witness' assertion of the privilege unless it is "perfectly clear" the question "cannot possibly" have a tendency to incriminate. *Id.* (quoting *Hoffman v. United States*, 341 U.S. 479, 488, 71 S.Ct. 814, 819, 95 L.Ed. 1118 (1951)). A witness may appeal a contempt order, and "cannot be cited for contempt for refusing to answer questions on the basis of a valid assertion of the Fifth Amendment privilege." *Id.* 311 Minn. at 283, 248 N.W.2d at 740.

In a civil contempt proceeding, the alleged contemnor has a right to invoke a Fifth Amendment privilege if testimony "could expose him to a prosecution for criminal contempt." *Engelby v. Engelby*, 479 N.W.2d 424, 427 (Minn.App.1992). Braun and Gibson were not required to show there were pending criminal contempt charges for violation of the TRO. *Minne-*

*sota State Bar Ass'n*, 311 Minn. at 278, 248 N.W.2d at 737.

■ The contempt statutes provide that the court shall investigate the charge of civil contempt "by examining the person and the witnesses for and against the person" to determine whether the person is in contempt. Minn.Stat. § 588.09 (1992); *see also Clausen v. Clausen*, 250 Minn. 293, 84 N.W.2d 675, 679 (1957) (contemnor must appear and be examined by the court before being jailed for contempt). However, this statutory provision does not override the Fifth Amendment privilege.

■ A violation of the court's order may be proved by other evidence, as the TRO violations were in this case. Only the alleged contemnor could testify as to his or her "reasons for failure [to comply]." *Hopp v. Hopp*, 279 Minn. 170, 174, 156 N.W.2d 212, 216 (1968). However, the contemnor's failure to testify would warrant the court's drawing every inference against him or her. *Parker*, 285 N.W.2d at 83. The testimony on financial ability, which was necessary to determine what sanction would likely produce compliance, was received here without an assertion of the Fifth Amendment privilege.

■ We conclude Minn.Stat. § 588.09 was intended to give the contemnor an opportunity to show compliance, rather than to grant the court a power to examine the contemnor in disregard of the Fifth Amendment privilege. *See generally, Eichinger v. Wicker Enter., Inc.*, 376 N.W.2d 751, 752 (Minn.App.1985) (alleged contemnor must be given opportunity to show compliance or reasons for failure to comply), *pet. for rev. denied* (Minn. Jan. 31, 1986); *see also Krmpotich v. Krmpotich*, 227 Minn. 567, 569, 35 N.W.2d 810, 811 (1949) (court should not have refused to permit alleged contemnor to testify in his own behalf).

■ The state contends the contempt adjudications can be sustained because most of the questions were "innocuous" rather than incriminating. A witness who properly invokes the Fifth Amendment as to some questions may be held in contempt for refusal to answer other questions. *See Minnesota State Bar Ass'n*, 311 Minn. at 284–85, 248 N.W.2d at 740 (concluding defendant properly claimed privilege as to most questions and therefore could not be held in contempt). However, the state's argument rests on too narrow a view of what is potentially incriminating. Most of the state's questions could indirectly incriminate Braun and Gibson.

■ The motion to clarify the contempt findings also applied too narrow a standard, recognizing the privilege only as to questions which were directly incriminating. Moreover, the actions of Braun and Gibson, particularly whether they "acted contumaciously, in bad faith, and out of disrespect for the judicial process," *Minnesota State Bar Ass'n*, 311 Minn. at 284, 248 N.W.2d at 740, must be judged as of the time they asserted the privilege. At that time, the trial court had indicated a categorical rejection of any claim of privilege. The witnesses would have been justified in believing they could not selectively invoke the privilege, but were required to assert it throughout the questioning. Moreover, answering some of the questions could have been construed as a waiver of the privilege. *See, e.g., United States v. Davenport*, 929 F.2d 1169, 1174 (7th Cir.1991).

### DECISION

Braun and Gibson properly invoked their Fifth Amendment privilege in response to questions asked them in the civil contempt proceeding. The trial court erred in finding them in criminal contempt.

**Reversed.**